1 CHRISTOPHER E. PANETTA, Esq. (SBN 175127)
  ELIZABETH R. LEITZINGER, Esq. (SBN 259677)
2 FENTON & KELLER
  A Professional Corporation
3 2801 Monterey-Salinas Highway
  Post Office Box 791
4 Monterey, California  93942-0791
  Telephone: (831) 373-1241
5 Facsimile: (831) 373-7219
  Email: CPanetta@FentonKeller.com
6 Email: ELeitzinger@FentonKeller.com

7 *Additional counsel continued on next page*

8 Attorneys for Defendant COMMUNITY HOSPITAL OF
  THE MONTEREY PENINSULA

9

10     UNITED STATES DISTRICT COURT

11     NORTHERN DISTRICT OF CALIFORNIA

12

| | |
|---|---|
| 13   RAYNALD ADAMS, SARAH ANDREWS, ANDREW BASHAW, LAUREN BRUCE, ANDREA CHAN, JAMES CHARLES III, HEATHER COX, ROSELLE EMPLEO-MENDOZA, JENNIFER FOLCK, CHRISTINA FOSTER, THEODORE GIBSON, TISHA GOZZELINO, KORYN GUTHRIE, LAURA HODGE, CHRISTINE KINKADE, AMY LANDRY, ANGELA MARTINEZ, STEPHANIE MCMERCURY, MICHAEL MILLER, SHILPA 0ZA, MICHAEL PAJULEO, ESTRAYA PELAYO, RIGOBERTO ROCHA, CHRISTINE ROCHON, FRANZ ROYO, ELISABETH SIMS, LOURDES SINCLAIR, MARIAH SMITH, SYDNEY SMITH, AMANDA STRAUTHERS, ALVARO VASQUEZ, MATTHEW WALBECK, LAVERNE WOODROW, SARAH WURTZ-HUSEBY, YASUKO YAMAMOTO, | Case No.: <br><br> **NOTICE OF REMOVAL** <br><br> Superior Court of California, County of Monterey, Case No. 21CV003717 <br><br> Complaint Filed: November 29, 2021 |
|      Plaintiffs, <br>    v. <br><br> COMMUNITY HOSPITAL OF THE MONTEREY PENINSULA, and DOES 1 through 50, inclusive, <br><br>      Defendants. | |

1    JEFFREY A. BERMAN, Esq. (SBN 50114)
     KIRAN A. SELDON, Esq. (SBN 212803)
2    SEYFARTH SHAW LLP
     2029 Century Park East, Suite 3500
3    Los Angeles, California 90067-3021
     Telephone:     310-201-1541
4    Facsimile:     310-282-6986
     Email: jberman@seyfarth.com
5    Email: kseldon@seyfarth.com

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendant Community Hospital of the Monterey Peninsula ("Community Hospital") files this Notice of Removal pursuant to 28 U.S.C. § 1446, and in support thereof, respectfully alleges the following:

## I. BACKGROUND AND PROCEDURAL HISTORY

1. On November 29, 2021, Plaintiffs filed suit against Community Hospital in the Superior Court of California, County of Monterey, Case No. 21CV003717.

2. Plaintiffs' Complaint asserts causes of action for religious discrimination and harassment under the California Fair Employment and Housing Act ("FEHA"), retaliation, and wrongful discharge resulting from alleged misconduct by a covered person in the administration of a covered countermeasure under the Public Readiness and Emergency Preparedness Act ("PREP Act"), 42 U.S.C. §§ 247d-6d(d), 247d-6e.

3. More specifically, the 34 named Plaintiffs in this case, who are all employees of Community Health, allege that their sincerely held religious beliefs were violated when they were wrongfully discharged for refusing to comply with Community Hospital's policy of requiring the vaccination of health care workers against COVID-19 to mitigate the spread of the virus.

4. The Complaint seeks compensatory damages, including economic and noneconomic damages, attorneys' fees/costs under Government Code section 12965(b), and punitive damages pursuant to Civil Code section 3294. *See* Ex. A, Compl.

5. On December 25, 2021, Plaintiffs completed service of the summons and complaint on Community Hospital.

6. On January 20, 2022, Community Hospital filed an answer in response to Plaintiffs' Complaint.

7. This Notice of Removal is timely filed within thirty days of service of the Complaint. 28 U.S.C. § 1446(b); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999).

8. Community Hospital has not secured the consent of the "DOE" defendants before removing this action because it does not know the identity of the "DOE" defendants and has no reason to believe that any of them have been properly served or have voluntarily appeared in this

1  action. *Fristoe v. Reynolds Metals Co*., 615 F.2d 1209, 1213 (9th Cir. 1980) ("Unknown defendants
2  sued as 'Does' need not be joined in a removal petition.").

3  **II.  JURISDICTION**

4  9.  This case is removable under 28 U.S.C. § 1441(a) on the basis of "original
5  jurisdiction" because Plaintiffs' Complaint asserts a claim "arising under" federal law within the
6  meaning of § 1331. As explained further below, because the PREP Act, the *Grable* doctrine, and
7  the federal officer removal statute all support this Court's jurisdiction, removal to this Court is
8  proper.

9  **A.  The PREP Act is applicable and provides federal question jurisdiction**

10  10.  This case is removable under 28 U.S.C. § 1441 because Plaintiffs have alleged
11  claims that are completely and expressly preempted under the federal PREP Act, and this Court has
12  original jurisdiction over the resulting federal question pursuant to 28 U.S.C. § 1331.

13  ***a.  The PREP Act applies to Plaintiffs' Complaint.***

14  11.  The PREP Act is a federal statute that provides immunity to health care facilities,
15  medical providers, and other authorized persons such as Community Hospital in the authorized
16  administration or use of countermeasures to prevent or mitigate the spread of COVID-19.
17  Specifically, this legislation empowers the Secretary of Health and Human Services ("HHS") to
18  issue a written declaration and provide that a "covered person" shall be immune from suit and
19  liability under Federal and State law with respect to ***all claims for loss caused by, arising out of,***
20  ***relating to, or resulting from*** the administration to or the use by an individual of a covered
21  countermeasure" during a health emergency. 42 U.S.C. § 247d-6d(a)(1) (emphasis added). Here,
22  the Secretary issued a Declaration, which became effective on February 4, 2020, to provide liability
23  immunity for activities related to medical countermeasures against COVID-19. 85 Fed. Reg.
24  15,198, 15,202 (March 17, 2020).

25  12.  To qualify for liability immunity under the PREP Act, the defendant must (1) meet
26  the definition of a "Covered Person," (2) administer or use "Covered Countermeasures," and (3)
27  administer "Covered Countermeasures" during a "Recommended Activity" in relation to COVID-
28  19. 42 U.S.C. § 247d-6d. The PREP Act then applies to "any claim for loss that has a causal

1   relationship with the administration to or use by an individual of a covered countermeasure." 42

2   U.S.C. § 247d-6d(a)(2)(B). Here, the PREP Act immunity applies, preempting Plaintiffs' state law

3   claims, because Community Hospital qualifies as a covered person engaged in a recommended

4   activity that includes the authorized administration and/or use of covered countermeasures during

5   the COVID-19 outbreak.

6           **i.      Community Hospital's vaccine policy constitutes a covered**

7                     **countermeasure.**

8           13.     Plaintiffs allege in their Complaint that Community Hospital required that all

9   employees, including Plaintiffs, be vaccinated against COVID-19. Plaintiffs refused to comply with

10  Community Hospital's policy of requiring the vaccination of health care workers against COVID-

11  19 and were therefore allegedly fired. As a result, Plaintiffs allege that Community Hospital

12  violated their sincerely held religious beliefs.

13          14.     "Covered countermeasures" under the PREP Act cover drugs, biological products,

14  or devices that are designed to diagnose, mitigate, prevent, or treat harm from the public health

15  emergency like COVID-19. 42 U.S.C. § 247d-6d(i)(1). The COVID-19 declaration more

16  specifically defines covered countermeasures as "any antiviral, any other drug, any biologic, any

17  diagnostic, any other device, or any vaccine, used to treat, diagnose, cure, prevent, or mitigate

18  COVID-19 . . . or any device used in the administration of any such product, and all components

19  and constituent materials of any such product." PREP Decl., 85 Fed. Reg. at 15,202. Thus, COVID-

20  19 vaccines have been specifically identified by the FDA and the HHS General Counsel as "covered

21  countermeasures." *See* PREP Decl., 85 Fed. Reg. at 15,202.

22          15.     "Administration" and "use" are not defined in the Act, but the Secretary's COVID-

23  19 Declaration states that "administration" of covered countermeasures "means physical provision

24  of the countermeasures to recipients, or activities and decisions directly relating to public and

25  private delivery, distribution and dispensing of the countermeasures to recipients, management and

26  operation of countermeasure programs, or management and operation of locations for purpose of

27  distributing and dispensing countermeasures." *Id.*

28          16.     Accordingly, Community Hospital's vaccine policy involved the administration or

FENTON & KELLER
ATTORNEYS AT LAW
MONTEREY

{ERL-01210381;1}                        - 5 -

1  use of "covered countermeasures" as that term is employed in the PREP Act. *See* 42 U.S.C. § 247d-

2  6d(i)(7); 85 Fed. Reg. 15,198, 15,202 (March 17, 2020).

3             **ii.**      **Community Hospital's vaccination policy was administered by**

4                  **"covered persons."**

5         17.    In addition, Community Hospital administered these covered countermeasures in its

6  role as a "program planner" and a "qualified person," and thus it constituted a "covered person"

7  under the PREP Act. *See* 42 U.S.C. § 247d-6d(i)(2) (definition of "covered person" includes a

8  "program planner" and "qualified person"). Specifically, a "program planner" is someone who

9  "supervised or administered a program with respect to the administration, dispensing, distribution,

10  provision, or use of a security countermeasure or a qualified pandemic or epidemic product,

11  including a person who . . . provides a facility to administer or use a covered countermeasure

12  pursuant to [the Secretary's Declaration]." PREP Act, 42 U.S.C. § 247d-6d(i)(6).[1]

13         18.    Meanwhile, a "qualified person" under the PREP Act includes:

14  
15       a licensed health professional or other individual who is authorized to prescribe, administer, or dispense such countermeasures under the law of the State in which

16       the countermeasure was prescribed, administered, or dispensed, 42 U.S.C. § 247-d-6d(i)(8); and

17       a person authorized in accordance with the public health and medical emergency response of the Authority Having Jurisdiction, . . . to prescribe, administer, deliver,

18       distribute or dispense the Covered Countermeasures, and their officials, agents,

19       employees, contractors and volunteers, following a Declaration of an emergency. *id.*; 85 Fed. Reg. at 15,202.

20  

21         19.    Community Hospital qualifies as a "covered person" under each of these

22  definitions.

23         20.    Here, Community Hospital is a "covered person" because it operates as a hospital

24  licensed by the State of California. Moreover, at the time of the allegations set forth in Plaintiffs'

25  Complaint, and based on such allegations, Community Hospital was acting as a "program planner"

26  that supervised the infection control policy program, under which FDA-approved COVID-19

27  vaccines and other countermeasures were distributed and administered to the staff of Community

28  

---

[1] Under the Secretary's Declaration, "[A] private sector employer or community group or other 'person' can be a program planner when it carries out the described activities." 85 Fed. Reg. at 15,202.

Hospital, including Plaintiffs, in an effort to diagnose, mitigate, and prevent COVID-19. Further, Community Hospital's employees and affiliates were acting as employees of a "program planner" that supervised and administered the infection control program which provided and used FDA approved COVID-19 vaccines on the staff of Community Hospital, including Plaintiffs, in an effort to diagnose and mitigate COVID-19.

21.     Moreover, the California Department of Public Heath ("CDPH") and HHS are both an "Authority With Jurisdiction" under the PREP Act with the "legal responsibility and authority for responding to an incident, based on political or geographical (e.g., city, county, tribal, state, or federal boundary lines) or functional (e.g., law enforcement, public health) range or sphere of authority." 85 Fed. Reg. at 15,202. Accordingly, Community Hospital's COVID-19 vaccine policy constitutes an authorized program for the dispensing and administration of covered countermeasures, 42 U.S.C. § 247d-6d(i)(6), 85 Fed. Reg. at 15,202, making Community Hospital a "program planner"; which was conducted in "accordance with the public health and medical emergency response of the Authority Having Jurisdiction, . . . to prescribe, administer, deliver, distribute or dispense the Covered Countermeasures," 42 U.S.C. § 247-d-6d(i)(8); 85 Fed. Reg. at 15,202, making Community Hospital a "qualified person."

22.     Finally, those administering COVID-19 vaccines as part of Community Hospital's vaccination policy were also licensed health care professionals authorized by the State (an Authority with Jurisdiction under the PREP Act) to administer such countermeasures. Accordingly, they were individuals who were "qualified persons" and thus "covered persons" under the PREP Act. *See, e.g.*, 42 U.S.C. § 247d-6d(i)(8); 85 Fed. Reg. at 15,202.

### iii.     Community Hospital's vaccination policy was part of recommended activities.

23.      Community Hospital's vaccination policy was also part of the "Recommended Activities" and thus an authorized administration and use of covered countermeasures that are provided PREP Act immunity under the Secretary's Declaration. Decl. 85 Fed. Reg. 15,198, 15,200. According to the Secretary's Declaration, "Recommended Activities" include the administration of covered countermeasures that are related to:

(a)    Present or future federal contracts, cooperative agreements, grants, other transactions, interagency agreements, memoranda of understanding, or other federal agreements; or

(b)    Activities authorized in accordance with the public health and medical response of the Authority Having Jurisdiction to prescribe, administer, deliver, distribute or dispense the Covered Countermeasures following a Declaration of an emergency.

85 Fed. Reg. 15,198, 15,200.

24.    The Secretary has further recently declared pursuant to his congressionally-delegated authority under the PREP Act that that PREP Act liability protections further extends to Covered Persons for Recommended Activities that are related to *any* Covered Countermeasure that is licensed, approved, cleared, or authorized by the FDA under the Federal Food, Drug, and Cosmetic (FD&C) Act or Public Health Service (PHS) Act to treat, diagnose, cure, prevent, mitigate or limit the harm from COVID–19, or the transmission of SARS–CoV–2 or a virus mutating therefrom.  To qualify for this third distribution channel, a Covered Person must only administer the Covered Countermeasure pursuant to the FDA licensure, approval, clearance, or authorization even if there is no federal agreement to cover those activities and those activities are not part of the authorized activity of an Authority Having Jurisdiction.  *See* Fourth Amendment to the Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19 and Republication of the Declaration (Dec. 9, 2020), 85 Fed. Reg. 52136.

25.    The HHS General Counsel has further opined that immunity applies:

when a covered person engages in activities related to an agreement or arrangement with the federal government, or when a covered person acts according to an Authority Having Jurisdiction to respond to a declared emergency. We interpret these two conditions broadly to include (1) any arrangement with the federal government, or (2) any activity that is part of an authorized emergency response at the federal, regional, state, or local level. Such activities can be authorized through, among other things, guidance, requests for assistance, agreements, or other arrangements.

*Id.*

26.    Here, in addition to the CDPH's guidance and other local orders and guidance,

1   Community Hospital administers its COVID-19 vaccine requirement policy pursuant to numerous

2   issuances of federal guidance, requests for assistance, agreements, or other arrangements, which

3   are part of the authorized emergency response to COVID-19. These include, without limitation, the

4   Secretary's November 2021 announcement that, in order for hospitals and other health care

5   providers to receive Medicare and Medicaid funding, participating facilities must ensure that their

6   staff—unless exempt for medical or religious reasons—are vaccinated against COVID–19. 86 Fed.

7   Reg. 61555 (2021). Moreover, it is undisputed that Community is administering its vaccine policy

8   pursuant to the FDA licensure, approval, clearance, or authorization.  Accordingly, Community

9   Hospital's vaccination policy was a part of the "Recommended Activities" under the Secretary's

10   Declaration.

11                iv.    **Plaintiffs' alleged harm falls within the scope of the PREP Act.**

12        27.    Finally, Plaintiffs' claims fall within the broad scope of the PREP Act because there

13   is a direct causal relationship between Plaintiffs' claims and the administration or use of the covered

14   countermeasures. The PREP Act states its immunity:

15        applies to any claim for loss that has a causal relationship with the administration to
16        or use by an individual of a covered countermeasure, including a causal relationship
         with the design, development, clinical testing or investigation, manufacture,
17        labeling, distribution, formulation, packaging, marketing, promotion, sale,
         purchase, donation, dispensing, prescribing, administration, licensing, or use of such
18        countermeasure.

19    42 U.S.C. § 247d-6d(a)(2)(B).

20        28.    Here, Plaintiff's claims are based on and arise out of Community Hospital's

21   vaccination policy, which relates to the distribution, dispensing, administration, or use of a covered

22   countermeasure (i.e., vaccination). At the time of the allegations set forth in the Complaint, the

23   COVID-19 vaccines used by Community Hospital were approved by the FDA as a qualified

24   pandemic or epidemic product, and were administered, delivered, distributed, and dispensed in

25   accordance with the public health and medical response of the State of California or reasonably

26   believed so by Community Hospital, and Plaintiffs' claim for loss "arises out of, relates to, or results

27   from" the administration and use of such "covered countermeasures."

28

29.     Ultimately, Plaintiffs' allegations that their employment was wrongfully discharged when they refused to be vaccinated are a direct, causal, and proximate result of Community Hospital's decision to require that its health care workers be vaccinated against COVID-19, which vaccines are the administration and use of covered countermeasures by covered persons. Because Community Hospital is a covered person and because Plaintiffs' allegations all concern Community Hospital's conscious decisions to use or not use covered countermeasures, including implementing policies and procedures relating to infectious diseases and COVID-19 vaccine requirements, Plaintiffs' claims squarely fall within the PREP Act.

**b.      The PREP Act is a complete preemption statute.**

30.     On its face, the allegations contained in Plaintiffs' Complaint demonstrate that a "covered person" was involved in "recommended activity" related to a "covered countermeasure" and therefore present a federal question under the PREP Act. As such, Congress provided an exclusive remedy for the substance of the allegations and relief sought in the Complaint, and federal law expressly pre-empts state law for purposes of federal question jurisdiction. *See* PREP Act, 42 U.S.C. §§ 247d-6d, 247d-6e.

31.     Circuit Courts and District Courts have found "complete preemption" where a federal statute expressly preempts state law and creates an exclusive federal remedy for preempted state claims. *See, e.g.*, *Fossen v. Blue Cross & Blue Shield of Montana, Inc.*, 660 F.3d 1102, 1107 (9th Cir. 2011); *In re WTC Disaster Site*, 414 F.3d 352, 380 (2d Cir. 2005); *Spear Marketing, Inc. v. Bancorp South Bank*, 791 F.3d 586 (5th Cir. 2015). As set forth below, Plaintiffs' claims are completely preempted by §§ 247d-6d and 247d-6e of the PREP Act. *See Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 253 (2011) (Sotomayor, J., dissenting) (The majority found that the National Childhood Vaccine Injury Act preempted state law. Justices Sotomayor and Ginsburg further analyzed that the PREP Act unequivocally demonstrated an intent to completely preempt state law through its use of "categorical (e.g., 'all') and/or declarative language (e.g., 'shall')") .

32.     Under 42 U.S.C. § 247d-6d(a), a "covered person" is afforded broad immunity for all "claims for loss arising out of, relating to, or resulting from" the "administration" or "use" of a

"covered countermeasure" as those terms are defined by that section, provided the Secretary of HHS issues a declaration to that effect.

33.     For all claims barred by immunity under 42 U.S.C. § 247d-6d that do not assert "willful misconduct," the exclusive remedy for relief is established under § 247d-6e, which permits an individual to make a claim for benefits through the Countermeasures Injury Compensation Program, also known as the Fund, for a "covered injury directly caused by the administration or use of a covered countermeasure." In fact, and for purposes of illustrating Congress's intent to address all claims, even a claimant alleging "willful misconduct" must first apply for benefits through the Fund under § 247d-6e before bringing an action under § 247d-6d(d). *Id*. § 247d-6e(d)(1). Further, even where a plaintiff has alleged willful misconduct and exhausted his remedies with respect to the Fund, such plaintiff is limited to "***an exclusive Federal cause of action***" for willful misconduct "maintained only in the United States District Court for the District of Columbia." 42 U.S.C. § 247d-6d9(d)(1)-(e)(1) (emphasis added). Moreover, under 42 U.S.C. § 247d-6d(b)(8), state law that "is different from, or in conflict with, any requirement applicable [for immunity]" is expressly preempted.

34.     Therefore, Congress has clearly manifested the intent to preempt state law with respect to claims that invoke PREP Act immunity and to create an exclusive federal remedy for such preempted claims, thereby "completely preempting" state law for purposes of federal question jurisdiction. *See Bruesewitz*, 562 U.S. at 253 (Sotomayor, J., dissenting).

35.     To avoid any doubt on this point, the Secretary amended the Declaration for the fifth time on January 28, 2021, confirming again in the Declaration itself that "[t]he plain language of the PREP Act makes clear that there is a complete preemption of state law."[2] Congress has reinforced the Secretary's ultimate authority over these matters concerning the PREP Act, and warns that "[n]o court . . . shall have subject matter jurisdiction to review, whether by mandamus or otherwise, any action by the Secretary under [the PREP Act.]" 42 U.S.C. § 247d-6d(b)(1), (4) & (7).

36.     The Sixth Amendment to the Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19 was also

---

[2] *See* Fifth Amendment to the Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19 and Republication of the Declaration, (Jan. 28, 2021), 86 Fed. Reg. 7872.

published on February 10, 2021. The Sixth Amendment affirms that "[t]he plain language of the PREP Act makes clear that there is preemption of state law as described above."[3] The Secretary again amended the Declaration for the seventh time on March 11, 2021, confirming yet again that the PREP Act is a complete preemption statute. *See* 86 Fed. Reg. at 7874.

37.     Despite Plaintiffs' assertion of state law claims, the doctrine of complete preemption is invoked and jurisdiction over these claims is exclusively federal. *See Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003) ("When the federal statute completely preempts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law.").

38.     Therefore, Plaintiffs' Complaint invokes a federal question for which the governing federal law "completely preempts" Plaintiffs' state law claims, and removal is proper under 28 U.S.C. § 1441(a).

**B.     Federal jurisdiction under the *Grable* doctrine**

39.     In addition to complete preemption, the Secretary's declarations confirm that the PREP Act confers separate, independent grounds for federal question jurisdiction under the *Grable* doctrine.

40.     On January 8, 2021, the Secretary of HHS issued controlling authority (hereinafter "AO 21-01") confirming that the PREP Act is invoked by allegations like those in the Complaint.[4] AO 21-01 highlights the Secretary's conclusion in the Fourth Amendment to the Declaration that "there are substantial federal legal and policy issues, and substantial federal legal and policy interests within the meaning of [the *Grable* doctrine] in having a unified, whole-of-nation response to the COVID-19 pandemic among federal, state, local, and private-sector entities." AO 21-01 (quoting 85 Fed. Reg. at 79,197).

41.     Courts have long recognized federal jurisdiction under the *Grable* doctrine. *See,*

---

[3] Sixth Amendment to the Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19 and Republication of the Declaration, (Jan. 28, 2021), 86 Fed. Reg. 9516.
[4] *The Office of the General Counsel, Secretary of the Department of Health and Human Services,* Advisory Opinion 21-01 On the Public Readiness And Emergency Preparedness Act Scope of Preemption Provision, https://www.hhs.gov/guidance/document/advisory-opinion-21-01-public-readiness-and-emergency-preparedness-act (issued January 8, 2021).

1    *e.g.*, *McKay v. City & Cty. of San Francisco*, 2016 WL 7425927, at *4 (N.D. Cal. Dec. 23, 2016)

2    (finding federal jurisdiction under *Grable* where plaintiff's request that the court enjoin use of flight

3    paths was "tantamount" to a challenge to the validity of an FAA decision); *Bender v. Jordan*, 623

4    F.3d 1128, 1131 (D.C. Cir. 2010) (finding federal jurisdiction under *Grable* where breach of

5    contract action arose under federal law because agreement was required by federal law and turned

6    on interpretation of federal regulations).

7        42.    Indeed, the Advisory Opinion's interpretation of *Grable* is consistent with the

8    Supreme Court's long-standing rule that "in certain cases federal question jurisdiction will lie over

9    state-law claims that implicate federal issues." *Grable & Sons Metal Prod., Inc. v. Darue Eng'g &*

10   *Mfg.*, 545 U.S. 308, 312 (2005). "The doctrine captures the commonsense notion that a federal

11   court ought to be able to hear claims recognized under state law that nonetheless turn on substantial

12   questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity

13   that a federal forum offers on federal issues." *Id*.

14       43.    The *Grable* Court held that no single precise test exists for determining whether an

15   embedded federal issue exists, but that, in general, a two-step process exists for analyzing whether

16   a state law claim "arises under" federal law: (1) the state law claim must necessarily raise a stated

17   federal issue that is actually disputed and substantial; and (2) federal courts must be able to entertain

18   the state law claims "without disturbing a congressionally approved balance of state and federal

19   judicial responsibilities." *Id.* at 314. Here, both prongs are satisfied.

20       44.    First, Plaintiffs bring claims as a result for Community Hospital's alleged use or

21   administration (or non-use or non-administration) of covered countermeasures in connection with

22   its COVID-19 vaccination requirement applicable to all staff, which necessarily implicates disputed

23   and substantial federal issues. *See* 42 U.S.C. § 247d-6d.

24       45.    Second, as confirmed by the Advisory Opinion and the Declaration, the PREP Act

25   expresses a clear intention to supersede and preempt state control of the very issues raised by

26   Plaintiffs, i.e., issues concerning Community Hospital's conscious decisions to use or not use

27   covered countermeasures, including the use or non-use of COVID-19 vaccination requirements. A

28   substantial and disputed federal issue regarding the application of the PREP Act to Plaintiffs' claims

1    therefore necessarily exists, and must be resolved by this Court to ensure the uniform and

2    appropriate application of the PREP Act.

3        46.    Thus, the two-step process under *Grable* is satisfied and this case is properly

4    removable.

5    **C.    Federal jurisdiction under the federal officer statute**

6        47.    Removal is also proper under 28 U.S.C. § 1442(a)(1), which provides for removal

7    where, as here, a defendant is sued for acts undertaken at the direction of a federal officer.

8        48.    "Unlike the general removal statute, the federal officer removal statute [§ 1442(a)] is

9    to be "broadly construed" in favor of a federal forum." *Durham v. Lockheed Martin Corp.*, 445 F.3d

10   1247, 1252 (9th Cir. 2006) (noting the U.S. Supreme Court has held the right of removal is "absolute"

11   for conduct performed under color of federal office, and "has insisted that the policy favoring

12   removal should not be frustrated by a narrow, grudging interpretation of section 1442(a)(1)").

13       49.    A case is removable under § 1442(a) if: "(1) Defendant is a 'person' within the

14   meaning of the statute; (2) Plaintiff's claims are based upon Defendant's conduct 'acting under' the

15   United States, its agencies, or its officers as a member of the nation's critical infrastructure; (3)

16   Plaintiff's claims are 'for, or relating to' an act under color of federal office; and (4) Defendant raises

17   a colorable federal defense to Plaintiffs' claims." *Stirling v. Minasian*, 955 F.3d 795 (9th Cir. 2020).

18   All requirements for removal under § 1442(a)(1) are satisfied here.

19       50.    Community Hospital is clearly "a person" under the federal officer removal statute

20   pursuant to § 1442(a)(1). *Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1245

21   (9th Cir. 2017); *see also* 1 U.S.C. § 1 (defining "person" to include corporations, companies,

22   associations, firms, partnerships, societies, and joint stock companies, as well as individuals).

23       51.    To satisfy this second requirement—i.e., "acting under" a federal officer—"a private

24   person's actions must involve an effort to assist, or to help carry out, the duties or tasks of the federal

25   superior." *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 152 (2007). Federal courts "have explicitly

26   rejected the notion that a defendant could only be 'acting under' a federal officer if the complained-of

27   conduct was done at the specific behest of the federal officer or agency." *Papp v. Fore-Kast Sales Co.*,

28   842 F.3d 805, 813 (3d Cir. 2016). The "acting under" requirement, like the federal removal statute

1    overall, is to be "liberally construe[d]" to cover actions that involve "an effort to assist, or to help carry

2    out, the federal supervisor's duties or tasks." *Goncalves*, 865 F.3d at 1247; *Watson*, 551 U.S. at 152.

3        52.    "[R]emoval by a 'person acting under' a federal officer must be predicated upon a

4    showing that the acts that form the basis for the state civil or criminal suit were performed pursuant

5    to an officer's direct orders or to comprehensive and detailed regulations. *See Bakalis v. Crossland

6    Savings Bank*, 781 F. Supp. 140, 144-45 (E.D.N.Y. 1991) ("The rule that appears to emerge from the

7    case law is one of 'regulation plus.'"); *see also Ryan v. Dow Chemical Co*., 781 F. Supp. 934, 947

8    (E.D.N.Y. 1992). "This control requirement can be satisfied by strong government intervention and

9    the threat that a defendant will be sued in state court 'based upon actions taken pursuant to federal

10   direction." *See Fung v. Abex, Corp.*, 816 F. Supp. 569, 572 (N.D. Cal. 1992). The "acting under"

11   requirement is met when the defendant is acting pursuant to detailed and ongoing instructions from a

12   federal officer. *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387 (5th Cir. 1998).

13       53.    In January 2020, in response to the pandemic and the national state of emergency, CMS

14   and CDC began issuing extremely detailed and pervasive directives to hospitals, nursing homes, and

15   other members of the nation's critical infrastructure and as part of the coordinated national effort to

16   respond to and contain the COVID-19 pandemic. CDPH surveyors, contracted by CMS, were now

17   supervising providers with respect to all aspects of infection control and the pandemic response, and

18   ensuring strict compliance with CMS directives. The issuance of in-time and evolving guidance in

19   response to a public health emergency was in contrast to the role of CMS before the pandemic. Prior

20   to the pandemic, the focus was on ensuring compliance with existing regulations. However,

21   throughout the pandemic, CMS and the California Department of Public Health, as its agent,

22   specifically instructed hospitals and other health care facilities to take or not take particular clinical

23   and operational actions in the absence of finding deficiencies that would otherwise require the

24   facility to develop its own plan of correction.

25       54.    Through the federal directives issued by CDC, CMS and California Department of

26   Public Health surveyors contracted by CMS, federal authorities were making operational decisions

27   as they related to the clinical pandemic response in hospitals. These facilities were ordered to, among

28   other things, restrict visitation, cancel communal dining, implement active screening of staff for

fever and respiratory symptoms, screen staff at the beginning of their shift for fever and respiratory symptoms and actively take their temperature and document the absence of shortness of breath and any new or change in cough or sore throat. Facilities were instructed on which patients and staff to test for COVID-19, under what circumstances to use and how to conserve PPE, when to permit staff who had COVID-19 to return to work, and how to handle the isolation of patients infected with COVID-19 and those under investigation for COVID-19. These very detailed clinical directives and instructions represented a marked departure from the regulatory structure which existed before the pandemic.

55.     More recently, in November 2021, the Secretary of HHS announced that, in order for hospitals and other health care providers to receive Medicare and Medicaid funding, participating facilities must ensure that their staff—unless exempt for medical or religious reasons—are vaccinated against COVID-19. 86 Fed. Reg. 61555 (2021). The Secretary did so under his authority, as a condition of a facility's participation in the programs, to promulgate "requirements as [he] finds necessary in the interest of the health and safety of individuals who are furnished services in the institution." 42 U. S. C. § 1395x(e)(9) (hospitals). Based on this authority, the Secretary has established long lists of detailed conditions with which facilities must comply to be eligible to receive Medicare and Medicaid funds. *See, e.g.*, 42 CFR pt. 482 (2020) (hospitals). Such conditions have include a requirement that certain providers maintain and enforce an "infection prevention and control program designed . . . to help prevent the development and transmission of communicable diseases and infections." *See id.* § 482.42(a) (hospitals).

56.     On November 5, 2021, the Secretary issued an interim final rule amending the existing conditions of participation in Medicare and Medicaid to add a new requirement—that facilities ensure that their covered staff are vaccinated against COVID-19. 86 Fed. Reg. 61561, 61616-61627. A facility's failure to comply may lead to monetary penalties, denial of payment for new admissions, and ultimately termination of participation in the programs. *Id*. at 61574.

57.     The Secretary issued the rule after finding that vaccination of health care workers against COVID-19 was "necessary for the health and safety of individuals to whom care and services are furnished." *Id.* at 61561. In many facilities, 35% or more of staff remain unvaccinated,

FENTON & KELLER
ATTORNEYS AT LAW
MONTEREY

{ERL-01210381;1}                                          - 16 -

1   and those staff, the Secretary explained, pose a serious threat to the health and safety of patients.

2   *Id.* at 61559. That determination was based on data showing that the COVID-19 virus can spread

3   rapidly among health care workers and from them to patients, and that such spread is more likely

4   when health care workers are unvaccinated. *Id*. at 61558-61561, 61567-61568, 61585-61586. He

5   also explained that, because Medicare and Medicaid patients are often elderly, disabled, or

6   otherwise in poor health, transmission of COVID-19 to such patients is particularly dangerous. *Id*.

7   at 61566, 61609. In addition to the threat posed by in-facility transmission itself, the Secretary also

8   found that "fear of exposure" to the virus "from unvaccinated health care staff can lead patients to

9   themselves forgo seeking medically necessary care," creating a further "ris[k] to patient health and

10   safety." *Id*. at 61588. He further noted that staffing shortages caused by COVID-19-related

11   exposures or illness has disrupted patient care. *Id*. at 61559.

12        58.    Earlier this month, the U.S. Supreme Court ruled that the federal government can

13   enforce the CMS vaccine mandate for health care workers, which covers more than 17 million such

14   workers, while cases challenging the mandate are being appealed. *See Biden v. Missouri*, 21A240,

15   2022 WL 120950 (U.S. Jan. 13, 2022).

16        59.    At all relevant times, Community Hospital, as part of the nation's critical

17   infrastructure, was acting at the specific direction of federal authorities to address the on-going

18   federal effort and national state of emergency to contain the COVID-19 pandemic and prevent the

19   spread of the virus. All actions taken by Community Hospital in preparation for and response to the

20   COVID-19 pandemic were taken in that critical role "in an effort to assist, or help carry out, the

21   duties or tasks" as ordered by the CDC, CMS and California Department of Public Health and

22   performed pursuant to the direct orders and comprehensive and detailed directives issued by these

23   agencies. Community Hospital was acting at the direction of the federal government to prevent,

24   treat, and contain COVID-19 at the facility and in its implementation of the COVID-19 vaccination

25   requirement applicable to all staff. Community Hospital's actions and conduct were taken due to

26   unprecedented and "strong government intervention," which went beyond the "mere auspices of

27   federal direction." *See Fung*, 816 F. Supp. at 572.

28        60.    Specifically, Community Hospital was acting at the direction and under the

supervision of the United States government with respect to various countermeasures implemented to prevent and treat the COVID-19 virus, including following evolving and specific guidelines and mandates from CMS and CDC with respect to: (1) infection control policies and procedures; (2) PPE procurement and allocation; (3) COVID-19 vaccine procurement, administration, and allocation; (4) admission and discharge of patients; (5) managing visitors and outside persons; (6) staffing allocation and retention; and (7) isolation protocols and management, among multiple additional directives.

61.    Community Hospital can establish a causal nexus between Plaintiffs' claims and the actions they took were under federal direction. *Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387, 398 (5th Cir. 1998). Here, Plaintiffs allege that Community Hospital's vaccine requirements conflict with their sincerely held religious beliefs. Community Hospital's response to the COVID-19 pandemic as it relates to the claims of Plaintiffs (i.e., requiring its employees to be vaccinated) was directly related to the orders and directives issued to them as members of the nation's critical infrastructure by the federal government. There is a clear nexus between the claims against Community Hospital and the actions it took in that role at the direction of the federal government, including but not limited to, the direction of CDC, CMS, as well as by representatives of the CDPH, with respect to the facility's response to the pandemic including COVID-19 vaccine requirements. The nexus element is therefore met as Community Hospital was following the orders/directives of CMS with regard to infection control and COVID-19 vaccination as part of the nation's critical infrastructure.

62.    Community Hospital also meets the requirement to assert colorable federal defenses. For purposes of removal, the defense must be "colorable" and need not be "clearly sustainable," because the purpose for the removal statute is to secure the validity of the defense so that it may be tried in federal court. *Willingham v. Morgan*, 395 U.S. 402, 407 (1969). The colorable defense element is met where a defendant alleges its actions were justified as the defendant was complying with federal directives with respect to the alleged wrongful acts. *See Mesa v. California*, 489 U.S. 121, 126-127; *see also Rural Community Workers Alliance v. Smithfield Foods, Inc.*, 2020 WL 2145350 (W.D. Mo. May 5, 2020) (holding that compliance with federal guidelines aimed at protecting employees from COVID-19 exposure served as a defense to civil liability). Here,

Community Hospital was complying with federal directives and regulations issued by CMS, CDC, and the California Department of Public Health in responding to all aspects of the COVID-19 pandemic.

63.     As a colorable defense, Community Hospital also asserts an immunity defense under the PREP Act as described above, which provides Community Hospital with immunity from "suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of covered countermeasure." Community Hospital's response to the COVID-19 outbreak as it relates to Plaintiffs was directly related to what they were asked to do by the federal government.

64.     Thus, removal is also proper pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a).

65.     Accordingly, the PREP Act, the *Grable* doctrine, and the federal officer removal statute are directly applicable to Plaintiffs' claims and support this Court's jurisdiction. As such, removal to this Court is proper.

**III.    NOTICE**

66.     Community Hospital will give notice of the filing of this Notice of Removal to all parties of record. Community Hospital will also file with the clerk of the state court and will serve upon plaintiffs a notice of the filing of this Notice of Removal.

**IV.    STATE COURT PLEADINGS**

67.     Copies of all state court pleadings and orders are attached to this Notice of Removal. Community Hospital attaches and incorporates by reference true and correct copies of all pleadings and other documents that were previously filed with the state court:

Exhibit 1 - Complaint

Exhibit 2 - Summons

Exhibit 3 - Civil Case Cover Sheet

Exhibit 4 - Notice of Assignment and Case Management Conference

Exhibit 5 - Proof of Service of Summons

Exhibit 6 - Answer

1

## V.    PRAYER

2          68.    WHEREFORE, having shown that this case is properly removable, Community

3  Hospital provides notice pursuant to 28 U.S.C. § 1446 that the action pending in the Superior Court

4  of California, County of Monterey, Case No. 21CV003717 is hereby removed to the United States

5  District Court for the Northern District of California.

6

7  Dated: January 21, 2022                          FENTON & KELLER

8                                        By:  /s/ Christopher E. Panetta

9                                              Christopher E. Panetta
                                               Elizabeth R. Leitzinger
10                                             Attorneys for Defendant
                                               COMMUNITY HOSPITAL OF THE
11                                             MONTEREY PENINSULA

12 Dated: January 21, 2022                          SEYFARTH SHAW LLP

13

14                                       By:  /s/ Jeffrey A. Berman

15                                             Jeffrey A. Berman
                                               Kiran A. Seldon
16                                             Attorneys for Defendant
                                               COMMUNITY HOSPITAL OF THE
17                                             MONTEREY PENINSULA

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

Daniel R. Watkins, Esq. (SBN 163571)
Parisa Fishback, Esq. (SBN 255218)
WATKINS & LETOFSKY, LLP
2900 S. Harbor Blvd., Suite 240
Santa Ana, CA 92704
Office: (949) 476-9400; Fax: (949) 476-9407
Attorneys for Plaintiffs

ELECTRONICALLY FILED BY
Superior Court of California,
County of Monterey
On 11/29/2021 1:14 PM
By: Rowena Esquerra, Deputy

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF MONTEREY

RAYNALD ADAMS, SARAH ANDREWS, ANDREW BASHAW, LAUREN BRUCE, ANDREA CHAN, JAMES CHARLES III, HEATHER COX, ROSELLE EMPLEO-MENDOZA, JENNIFER FOLCK, CHRISTINA FOSTER, THEODORE GIBSON, TISHA GOZZELINO, KORYN GUTHRIE, LAURA HODGE, CHRISTINE KINKADE, AMY LANDRY, ANGELA MARTINEZ, STEPHANIE MCMERCURY, MICHAEL MILLER, SHILPA OZA, MICHAEL PAJULEO, ESTRAYA PELAYO, RIGOBERTO ROCHA, CHRISTINE ROCHON, FRANZ ROYO, ELISABETH SIMS, LOURDES SINCLAIR, MARIAH SMITH, SYDNEY SMITH, AMANDA STRAUTHERS, ALVARO VASQUEZ, MATTHEW WALBECK, LAVERNE WOODROW, SARAH WURTZ-HUSEBY, YASUKO YAMAMOTO,

        Plaintiffs,

    vs.

COMMUNITY HOSPITAL OF THE MONTEREY PENINSULA, and DOES 1 through 50, inclusive,

        Defendants.

Case No.:   21CV003717
Assigned for all Purposes to Dept.:
The Honorable
[Unlimited Civil Case]

**COMPLAINT FOR DAMAGES**

**(1) RELIGIOUS DISCRIMINATION - VIOLATION OF GOVERNMENT CODE §§12940(a, l) ET. SEQ.**
**(2) RELIGIOUS DISCRIMINATION – FAILURE TO ENGAGE IN INTERACTIVE PROCESS IN VIOLATION OF GOVERNMENT CODE §§12940(l) ET. SEQ.**
**(3) RELIGIOUS DISCRIMINATION— FAILURE TO PROVIDE REASONABLE ACCOMMODATIONS IN VIOLATION OF GOVERNMENT CODE §§12940(l) ET. SEQ.**
**(4) HARASSMENT IN VIOLATION OF GOVERNMENT CODE §§12940 ET. SEQ.**
**(5) RETALIATION IN VIOLATION OF GOVERNMENT CODE §§12940(h, l) ET. SEQ.**
**(6) WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY**

**DEMAND FOR JURY TRIAL**

Trial Date:    Not yet Assigned

1

Plaintiffs, RAYNALD ADAMS, SARAH ANDREWS, ANDREW BASHAW, LAUREN BRUCE, ANDREA CHAN, JAMES CHARLES III, HEATHER COX, ROSELLE EMPLEO-MENDOZA, JENNIFER FOLCK, CHRISTINA FOSTER, THEODORE GIBSON, TISHA GOZZELINO, KORYN GUTHRIE, LAURA HODGE, CHRISTINE KINKADE, AMY LANDRY, ANGELA MARTINEZ, STEPHANIE MCMERCURY, MICHAEL MILLER, SHILPA OZA, MICHAEL PAJULEO, ESTRAYA PELAYO, RIGOBERTO ROCHA, CHRISTINE ROCHON, FRANZ ROYO, ELISABETH SIMS, LOURDES SINCLAIR, MARIAH SMITH, SYDNEY SMITH, AMANDA STRAUTHERS, ALVARO VASQUEZ, MATTHEW WALBECK, LAVERNE WOODROW, SARAH WURTZ-HUSEBY, YASUKO YAMAMOTO (Collectively "Plaintiffs"), complain against Defendants, and each of them, demands a trial by jury of all issues and for all causes of action, and hereby alleges, based upon information and belief, the following:

**PARTIES**

1.      Plaintiff, RAYNALD ADAMS, is and was at all times relevant to this action an employee of Defendants as defined by California Code of Regulations, § 11008(c), and a resident of State of California.

2.      Plaintiff, SARAH ANDREWS, is and was at all times relevant to this action an employee of Defendants as defined by California Code of Regulations, § 11008(c), and a resident of State of California.

3.      Plaintiff, ANDREW BASHAW, is and was at all times relevant to this action an employee of Defendants as defined by California Code of Regulations, § 11008(c), and a resident of State of California.

4.      Plaintiff, LAUREN BRUCE, is and was at all times relevant to this action an employee of Defendants as defined by California Code of Regulations, § 11008(c), and a resident of State of California.

5.      Plaintiff, ANDREA CHAN, is and was at all times relevant to this action an employee of Defendants as defined by California Code of Regulations, § 11008(c), and a resident of State of California.

2

**COMPLAINT FOR DAMAGES**

6.      Plaintiff, JAMES CHARLES, III, is and was at all times relevant to this action an employee of Defendants as defined by California Code of Regulations, § 11008(c), and a resident of State of California.

7.      Plaintiff, HEATHER COX, is and was at all times relevant to this action an employee of Defendants as defined by California Code of Regulations, § 11008(c), and a resident of State of California.

8.      Plaintiff, ROSELLE EMPLEO-MENDOZA, is and was at all times relevant to this action an employee of Defendants as defined by California Code of Regulations, § 11008(c), and a resident of State of California.

9.      Plaintiff, JENNIFER FOLCK, is and was at all times relevant to this action an employee of Defendants as defined by California Code of Regulations, § 11008(c), and a resident of State of California.

10.      Plaintiff, CHRISTINA FOSTER, is and was at all times relevant to this action an employee of Defendants as defined by California Code of Regulations, § 11008(c), and a resident of State of California.

11.      Plaintiff, THEODORE GIBSON, is and was at all times relevant to this action an employee of Defendants as defined by California Code of Regulations, § 11008(c), and a resident of State of California.

12.      Plaintiff, TISHA GOZZELINO, is and was at all times relevant to this action an employee of Defendants as defined by California Code of Regulations, § 11008(c), and a resident of State of California.

13.      Plaintiff, KORYN GUTHRIE, is and was at all times relevant to this action an employee of Defendants as defined by California Code of Regulations, § 11008(c), and a resident of State of California.

14.      Plaintiff, LAURA HODGE, is and was at all times relevant to this action an employee of Defendants as defined by California Code of Regulations, § 11008(c), and a resident of State of California.

///

**COMPLAINT FOR DAMAGES**

15.    Plaintiff, CHRISTINE KINKADE, is and was at all times relevant to this action an employee of Defendants as defined by California Code of Regulations, § 11008(c), and a resident of State of California.

16.    Plaintiff, AMY LANDRY, is and was at all times relevant to this action an employee of Defendants as defined by California Code of Regulations, § 11008(c), and a resident of State of California.

17.    Plaintiff, ANGELA MARTINEZ, is and was at all times relevant to this action an employee of Defendants as defined by California Code of Regulations, § 11008(c), and a resident of State of California.

18.    Plaintiff, STEPHANIE MCMERCURY, is and was at all times relevant to this action an employee of Defendants as defined by California Code of Regulations, § 11008(c), and a resident of State of California.

19.    Plaintiff, MICHAEL MILLER, is and was at all times relevant to this action an employee of Defendants as defined by California Code of Regulations, § 11008(c), and a resident of State of California.

20.    Plaintiff, SHILPA OZA, is and was at all times relevant to this action an employee of Defendants as defined by California Code of Regulations, § 11008(c), and a resident of State of California.

21.    Plaintiff, MICHAEL PAJULEO, is and was at all times relevant to this action an employee of Defendants as defined by California Code of Regulations, § 11008(c), and a resident of State of California.

22.    Plaintiff, ESTRAYA PELAYO, is and was at all times relevant to this action an employee of Defendants as defined by California Code of Regulations, § 11008(c), and a resident of State of California.

23.    Plaintiff, RIGOBERTO ROCHA, is and was at all times relevant to this action an employee of Defendants as defined by California Code of Regulations, § 11008(c), and a resident of State of California.

///

4

**COMPLAINT FOR DAMAGES**

24.     Plaintiff, CHRISTINE ROCHON, is and was at all times relevant to this action an employee of Defendants as defined by California Code of Regulations, § 11008(c), and a resident of State of California.

25.     Plaintiff, FRANZ ROYO, is and was at all times relevant to this action an employee of Defendants as defined by California Code of Regulations, § 11008(c), and a resident of State of California.

26.     Plaintiff, ELISABETH SIMS, is and was at all times relevant to this action an employee of Defendants as defined by California Code of Regulations, § 11008(c), and a resident of State of California.

27.     Plaintiff, LOURDES SINCLAIR, is and was at all times relevant to this action an employee of Defendants as defined by California Code of Regulations, § 11008(c), and a resident of State of California.

28.     Plaintiff, MARIAH SMITH, is and was at all times relevant to this action an employee of Defendants as defined by California Code of Regulations, § 11008(c), and a resident of State of California.

29.     Plaintiff, SYDNEY SMITH, is and was at all times relevant to this action an employee of Defendants as defined by California Code of Regulations, § 11008(c), and a resident of State of California.

30.     Plaintiff, AMANDA STRAUTHERS, is and was at all times relevant to this action an employee of Defendants as defined by California Code of Regulations, § 11008(c), and a resident of State of California.

31.     Plaintiff, ALVARO VASQUEZ, is and was at all times relevant to this action an employee of Defendants as defined by California Code of Regulations, § 11008(c), and a resident of State of California.

32.     Plaintiff, MATTHEW WALBECK, is and was at all times relevant to this action an employee of Defendants as defined by California Code of Regulations, § 11008(c), and a resident of State of California.

///

**COMPLAINT FOR DAMAGES**

33.    Plaintiff, LAVRENE WOODROW, is and was at all times relevant to this action an employee of Defendants as defined by California Code of Regulations, § 11008(c), and a resident of State of California.

34.    Plaintiff, SARAH WURTZ-HUSEBY, is and was at all times relevant to this action an employee of Defendants as defined by California Code of Regulations, § 11008(c), and a resident of State of California.

35.    Plaintiff, YASUKO YAMAMOTO, is and was at all times relevant to this action an employee of Defendants as defined by California Code of Regulations, § 11008(c), and a resident of State of California.

36.    Defendant, COMMUNITY HOSPITAL OF THE MONTEREY PENINSULA, is a Corporation, residing and incorporated in the State of California with a principal place of business in the State of California, County of Monterey, where it operated as a qualified employer pursuant to Government Code § 12926(d) and conducted business at all relevant times stated herein.

37.    Plaintiff is ignorant of the true names and capacities of the Defendants sued herein as DOES 1 through 50, inclusive, and therefore sues these defendants by fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained.

38.    Plaintiff is informed and believes and thereon alleges that at all times mentioned herein, each of the fictitiously named Defendants is negligently or otherwise responsible in some manner, along with the named Defendants, for the occurrences herein alleged, and Plaintiffs' damages as herein alleged were legally and proximately caused by the acts and/or omissions of both the named and fictitiously named defendants.

39.    Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, the Defendants named in this action, as well as the fictitiously named Defendants, and each of them, were agents and employees of the remaining Defendants, and in doing the things hereinafter complained of, were acting within the course and scope of such agency and/or employment and with the knowledge and consent of the remaining Defendants.

///

///

**COMPLAINT FOR DAMAGES**

**JURISDICTION & VENUE**

40.     This Court has original jurisdiction of the claims arising under the California Fair Employment and Housing Act, Government Code section 12900 *et seq*. ("FEHA"), including but not limited to §§ 12926 and 12940.

41.     Venue is proper in this judicial district, pursuant to California Code of Civil Procedure § 395. One or more of the Defendants resides within and/or does business within the County of Monterey, and all acts and omissions giving rise to liability are alleged to have occurred in County of Monterey, making this Court the proper venue for Plaintiffs' claims.

**ADMINISTRATIVE REMEDIES**

42.     Each Plaintiff has satisfied all private, administrative, and judicial prerequisites to the institution of this action.

43.     Plaintiffs each timely filed charges with the California Department of Fair Employment and Housing ("DFEH") against the named Defendant, COMMUNITY HOSPITAL OF THE MONTEREY PENINSULA, for the wrongful acts alleged herein, and was issued right-to-sue letters by the DFEH within the past year.

44.     This action is not preempted by the California Workers' Compensation Act because claims brought under the California Fair Employment and Housing Act ("FEHA"), including without limitation, religion, age, sex, marital status, and gender, are not risks or conditions of employment subject to workers' compensation law.

45.     This action is not preempted by any collective bargaining agreement, the National Labor Relations Act, or other federal law because these claims arise out of violations of the public policies of the State of California as set forth in the California Constitution, California Fair Employment & Housing Act per Government Code §12900, *et seq*. and other state laws.

**FACTS COMMON TO ALL CAUSES OF ACTION**

46.     Each Plaintiff requested an exemption from COMMUNITY HOSPITAL OF THE MONTEREY PENINSULA's ("CHOMP") COVID-19 vaccination policy as a reasonable accommodation to their sincerely held religious beliefs and/or medical condition. Each of these employees received a similar denial of the request stating in part:

**COMPLAINT FOR DAMAGES**

Consistent with state and federal law, it is our policy to make reasonable accommodations for individuals whose religious beliefs, practices, or observances conflict with hospital policy unless an undue hardship would result. After careful review and consideration, it has been determined that the requested religious exemption will cause an *undue hardship because COVID-19 poses a significant and direct threat to the health and safety of our patients, many of whom are immune compromised and / or otherwise vulnerable with fragile health conditions, our coworkers, and members of our community.* (Emphasis added.)

47.     The denial goes on to state:

Unvaccinated persons are more likely to get infected and spread the virus, and most current hospitalizations and deaths are among unvaccinated persons. As a health care provider, we serve uniquely vulnerable populations where a COVID-19 outbreaks can have severe consequences including hospitalization, severe illness, and death. California Department of Public Health (CDPH) has frequently tracked recent COVID-19 outbreaks in healthcare settings - among both patients and staff members – to unvaccinated workers. The state's August 5 mandate that all health care workers be vaccinated is *one of several additional measures being taken to protect vulnerable populations in our facilities and in our communities and to ensure a sufficient supply of health care workers. We support that mandate*, and our community counts on us to ensure that we take all necessary measures to ensure the safety of those we serve and our own workforce. (Emphasis added.)

48.     The blanket denial to all employees requesting an exemption evidences an intentional disregard of the requests and clearly constitutes of violation of these employees' rights under state law, as shown below.  The fact that CHOMP's form denial letter does not reference the July 26 mandate from CDPH or the non-pharmaceutical interventions recommended in the Order to provide a safe work environment highlights the malicious and reckless intent behind CHOMPS's denial letters.

**Scope of Mandatory Vaccination Orders and Policies at Issue**

49.     Given the CHOMP's reliance on the State of California Public Health Officer's COVID-19 mandatory vaccination Order of August 5, 2021, we turn to the California Department of Public Health ("CDPH") Orders for guidance.  On July 26, 2021, CDPH issued the "State Public Health Officer Order of July 26, 2021" with the subject of "*Health Care Worker Protections in High-Risk Settings*."[1]  (Emphasis added.) Then, on August 5, 2021, the California Department of

---

[1] https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/COVID-19/Order-of-the-State-Public-Health-Officer-Unvaccinated-Workers-In-High-Risk-Settings.aspx

**COMPLAINT FOR DAMAGES**

Public Health issued a second order "State Public Health Officer Order of August 5, 2021" with the subject of "Health Care Worker Vaccine Requirements."[2]  The CDPH also issued "Public Health Order Questions & Answers: Health Care Worker Protections in High-Risk Settings" (last updated September 3, 2021)[3] and the "Public Health Order Questions & Answers: Health Care Worker Vaccine Requirement"[4] (last updated September 14, 2021).  Both the August 5 mandate and the Q&A on vaccine requirements confirm that the July 26, 2021 Order remains in effect.  To this end, all of the orders are in effect and work together.

50.    The CDPH Orders clearly contemplate individuals will be eligible for and receive religious and medical exemptions and reasonable accommodations to the vaccination mandate. The August 5 Order specifically states:

> 2.  Workers may be exempt from the vaccination requirements under section (1) only upon providing the operator of the facility a declination form, signed by the individual stating either of the following: (1) the worker is declining vaccination based on Religious Beliefs, or (2) the worker is excused from receiving any COVID-19 vaccine due to Qualifying Medical Reasons.

51.    The August 5 Order then identifies the accommodations for employees exempt from the vaccination mandate for religious or medical reasons stating testing requirements and other non-pharmaceutical interventions required of workers who are not fully vaccinated.

52.    The July 26, 2021 Order provides specific accommodations for individuals not fully vaccinated to include testing and masks. Specifically, the Order states,

> 3.  If an operator of a facility listed above under section (1) deems a worker to have met the requirements of an exemption pursuant to section (2), the unvaccinated exempt worker must meet the following requirements when entering *or working in such facility*:
> a.  Test for COVID-19 with either PCR or antigen test that either has Emergency Use Authorization by the U.S. Food and Drug Administration or be operating per the Laboratory Developed Test requirements by the U.S. Centers for Medicare and Medicaid Services. Testing must occur twice weekly for unvaccinated exempt workers in acute health care and long-term care settings, and once weekly for such workers in other health care settings.

---

[2] https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/COVID-19/Order-of-the-State-Public-Health-Officer-Health-Care-Worker-Vaccine-Requirement.aspx
[3] https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/COVID-19/Unvaccinated-Workers-in-High-Risk-Settings-State-Public-Health-Order-FAQ.aspx
[4] https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/COVID-19/FAQ-Health-Care-Worker-Vaccine-Requirement.aspx

**COMPLAINT FOR DAMAGES**

b.  Wear a surgical mask or higher-level respirator approved by the National Institute of Occupational Safety and Health (NIOSH), such as an N95 filtering facepiece respirator, at all times while in the facility.  (Emphasis added.)

53.    Moreover, the "Q&A" for Health Care Worker Protections in High-Risk Settings provides an entire section outlining the testing requirements for individuals who receive religious or medical exemptions.   The "Q&A" for Health Care Worker Vaccine Requirement also specifically addresses this issue by stating:

**Which tests qualify for workers who have a valid exemption? (e.g., point of care tests, rapid tests, community testing sites and do tests need to be approved by the FDA?)**
Antigen, PCR, or any Nucleic acid amplification (NAAT) test would qualify and must either have Emergency Use Authorization by the U.S. Food and Drug Administration or be operating per the Laboratory Developed Test requirements by the U.S. Centers for Medicare and Medicaid Services.  (Emphasis in original.)

**Scope of Requests for Exemption Based on Religious Beliefs and CHOMP's Denial to the Requests**

54.    In the denial letter, CHOMP completely failed to address the sincerity of religious beliefs presented by the employees with their requests for exemption.

55.    The California Fair Employment and Housing Act (FEHA) (California Government Code §12900 et seq.) provides broad workplace protections for people of sincere religious faith. For instance, it is generally unlawful for an employer to "exclude or to suspend an employee, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin." Within this framework, FEHA requires an employer to reasonably accommodate an employee's sincere religious beliefs, observances and practices, unless such an accommodation would impose an undue hardship.

56.    "Religion" in the employment context is generally defined as all aspects of religious observance and practice, as well as belief. In view of this broad definition by the California Legislature, it cannot be said that any employer covered by FEHA may legally or constitutionally require an employee to belong to any "bona-fide" religious organization as a condition for receiving an accommodation. At the very most, an employer may only require that an employee's asserted religious beliefs be sincere. Accordingly, while the employers may compel an employee

**COMPLAINT FOR DAMAGES**

to articulate what her religious beliefs are, they are prohibited from requiring the employee to prove that such beliefs are logical, widely acceptable, consistent, or even comprehensible.

57.    An employer may not require an employee to waive nor limit their right to an accommodation under FEHA without the employee's express consent. It is therefore wrong for the employer to presume that it is legally empowered to restrict religious accommodations to only those employees who can "empirically prove" that they are members of a religious organization with traditional tenets against vaccines. Allowing the hospital to make such a restriction is necessarily discriminatory, and a violation of state and federal law, to the extent that established religions with official anti-vaccine positions are being favored over religions with no official positions.

58.    The sincerity of an employee's stated religious belief is usually not in dispute and is generally presumed or easily established. Employers are not and should not be in the business of deciding whether a person holds religious beliefs for the proper reasons and they should limit the inquiry to whether or not the religious belief system is sincerely held; and should not review the motives or reasons for holding the belief in the first place. CHOMP is not permitted to determine which religious adherent has a "correct" or "proper" or "valid" understanding of religious doctrine, or whether any employee's sincerely held religious beliefs are shared broadly among other faithful. Religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit legal protection. Additionally, though membership in or adherence to the tenets of an organized religion is plainly sufficient to provide protection for an individual's sincerely held religious beliefs, it is not a necessary precondition.

59.    In fact, the law provides protection for sincerely held religious beliefs even when some members of the same religious organization, sect, or denomination disagree with the beliefs espoused by the individual. That some individuals may have sincerely held religious beliefs which differ from those sincerely held by other CHOMP employees requesting accommodation is irrelevant to whether the employee's sincerely held religious beliefs are entitled to protection under the California Fair Employment and Housing Act.

**COMPLAINT FOR DAMAGES**

60.     In line with the CDPH Orders and the law referenced above, Plaintiffs submitted requests for religious accommodation providing CHOMP notice that accepting or receiving any of the three currently available COVID-19 vaccines would be a violation of their sincerely held religious beliefs. These requests for accommodations stated various sincerely held religious beliefs including, but not limited to, life is sacred from the moment of conception to natural death, taking an innocent life is a grievous wrong, being required to benefit from the taking of a life creates an irreconcilable conflict between the belief and the work requirement of COVID-19 vaccination, and their bodies are temples of the Holy Spirit and that to inject medical products that have any connection whatsoever to aborted fetal cell lines would be defiling the temple of the Holy Spirit.

61.     Because all three of the currently available COVID-19 vaccines are developed and produced from, tested with, researched on, or otherwise connected with the aborted fetal cell lines, Plaintiffs' sincerely held religious beliefs compel them to abstain from accepting or injecting any of these products into their bodies, regardless of the perceived benefits or rationales. Thus, while there may be some faith leaders and other adherents whose belief of Scripture is different, and who may be willing to accept one of the three currently available COVID-19 vaccines despite their connection with aborted fetal cell lines, any CHOMP employee is entitled to interpret the Scriptural commands differently.

62.     The denial of any employee's request for a religious accommodation based upon the views of other individuals who do not share the employee's beliefs is unlawful. In fact, it is legally irrelevant what other individuals think or religiously believe. Nor does an employee's religious objection to a vaccine need to be unique to be personal and sincerely held. Once an employee has articulated the employee's sincerely held religious objections to the currently available COVID-19 vaccines, whether those objections are the same as or nothing like any other person's objections, the proper inquiry is at its end.

**CHOMP's Unlawful Claim of Undue Hardship**

63.     In issuing its denial letter, CHOMP claims that it cannot provide an accommodation to the plaintiffs due to the undue hardship present by the requests.  Government Code § 12926(u) provides the definition of "undue hardship" as follows:

**COMPLAINT FOR DAMAGES**

"Undue hardship" means an action requiring significant difficulty or expense, when considered in light of the following factors:

(1) The nature and cost of the accommodation needed.

(2) The overall financial resources of the facilities involved in the provision of the reasonable accommodations, the number of persons employed at the facility, and the effect on expenses and resources or the impact otherwise of these accommodations upon the operation of the facility.

(3) The overall financial resources of the covered entity, the overall size of the business of a covered entity with respect to the number of employees, and the number, type, and location of its facilities.

(4) The type of operations, including the composition, structure, and functions of the workforce of the entity.

(5) The geographic separateness or administrative or fiscal relationship of the facility or facilities.

64.     As to what an "undue hardship" entails, an employer must either provide factual evidence that co-workers of an accommodated employee will be significantly imposed upon, or that a material disruption of the work routine will occur. Mere hypothetical scenarios of what could happen if an employee is granted an accommodation are wholly insufficient. If the employee proves a prima facie case and the employer fails to initiate an accommodation for the religious practices, the burden is then on the employer to prove it will incur an undue hardship if it accommodates that belief.

65.     To further clarify, CACI 2561. Religious Creed Discrimination – Reasonable Accommodation - Affirmative Defense - Undue Hardship (Gov. Code, §§ 12940(l)(1), 12926(u)) provides that when the defendant claims accommodating the employee's religious beliefs would create an undue hardship to the operation of its business, the defendant must prove that it considered reasonable alternative options for accommodating the religious belief, including mask wearing and testing in this case, and it did not adopt such measures because it would be significantly difficult or expensive.

66.     CHOMP, in stating it's claim of undue hardship, completely fails to provide factual evidence to support its claim and in so doing fails to identify any condition or circumstance that satisfies the definition of undue hardship as set forth in the Fair Employment and Housing Act or CACI jury instructions. CHOMP fails to point to a single action requiring significant difficulty or

**COMPLAINT FOR DAMAGES**

expense. CHOMP fails to identify these conditions because they are not present. Instead, CHOMP relies on mere hypothetical scenarios. CHOMP takes this position despite the fact that health care facilities across the state are providing testing and masks as reasonable accommodations consistent with the CDPH Order. Also, testing and mask wearing does not present an undue hardship because CHOMP and other hospitals have been doing it since the beginning of COVID-19 either in the form of screenings and/or testing and/or mask wearing.

67. Instead of following the law, CHOMP boldly claims that to follow the CDPH August 5 Order it must place exempted employees on an unprotected, unpaid leave of absence because of the risk to employees and patients. Yet the Orders from the CDPH on this issue expressly provide an alternate accommodation for exempted employees through testing and mask wearing that allows them to continue to work while maintaining a safe environment for employees and patients. As indicated, health care facilities across the state are following the safety guidelines from the CDPH for exempted employees and allowing them to continue working. The notion that exempted employees present a greater risk to patients at CHOMP than they do to patients in other health care facilities across the state is a farce. CHOMP's claim in this regard flies in the face of the July 26 and August 5 Orders and is intended only to discriminate against those individuals who have exercised their right to religious or medical exemptions.

68. Further evidence of CHOMP's discrimination with these denials is present in CHOMP's turning a blind eye to the current state of the science which clearly indicates that vaccinated individuals spread COVID-19 just as unvaccinated individuals.

69. The most compelling evidence that vaccinated individuals pose the same risk of transmission as unvaccinated individuals comes from Rochelle Walensky, Director of the Centers for Disease Control ("CDC"). Director Walensky met with Wolf Blitzer to discuss COVID-19 issues. In this CNN interview, Director Walensky states in no uncertain terms that individuals vaccinated for COVID-19, while having less symptoms, can still become infected with and transmit the virus. Director Walensky was asked by Wolf Blitzer: "You get COVID, you're fully vaccinated, but you are totally asymptomatic, you can still pass on the virus to someone else, is that right?" Director Walensky answered "That is exactly right." Director Walensky elaborated by

**COMPLAINT FOR DAMAGES**

noting the vaccines help with regard to reducing the severity of the symptoms for those who catch COVID-19 "*but what they can't do anymore is prevent transmission.*"[5]

70.    The CDC also reports that "During July 2021, 469 cases of COVID-19 associated with multiple summer events and large public gatherings in a town in Barnstable County, Massachusetts, were identified among Massachusetts residents; vaccination coverage among eligible Massachusetts residents was 69%. Approximately three quarters (346; 74%) of cases occurred in fully vaccinated persons (those who had completed a 2-dose course of mRNA vaccine [Pfizer-BioNTech or Moderna] or had received a single dose of Janssen [Johnson & Johnson] vaccine ≥14 days before exposure). Overall, 274 (79%) vaccinated patients with breakthrough infection were symptomatic. Among five COVID-19 patients who were hospitalized, four were fully vaccinated."[6] In short, the study found that *three-quarters of cases occurred in fully vaccinated people*. Massachusetts had a high rate of vaccination: about 69% among eligible adults in the state at the time of the study.

71.    The CDC also found no significant difference in the viral load present in the breakthrough infections occurring in fully vaccinated people and the other cases, *suggesting the viral load of vaccinated and unvaccinated persons infected with the coronavirus is similar*.[7] On July 27, 2021, CDC released updated guidance and a recommendation everyone to wear a mask in public indoor places, even if they are fully vaccinated.[8]

72.    With this information, it is clear that vaccinated employees present the same risk of infection to patients as unvaccinated and yet, CHOMP claims that the only possible way to present a safe environment is to remove unvaccinated people from the facilities.  The fact that the CDPH continues to recommend that exempted individuals can safely work in healthcare facilities with testing and mask wearing, makes absolutely clear that CHOMP's claim of undue hardship is

---

[5] https://www.youtube.com/watch?v=TKFWGvvlVLI (August 6, 2021, CDC Director, in an interview with CNN's Wolf Blitzer, starting at time mark 0:56 to 1:56.
[6] https://www.cdc.gov/mmwr/volumes/70/wr/mm7031e2.htm?s_cid=mm7031e2_w
[7] https://www.npr.org/sections/coronavirus-live-updates/2021/07/30/1022867219/cdc-study-provincetown-delta-vaccinated-breakthrough-mask-guidance
[8] https://www.cdc.gov/coronavirus/2019-ncov/variants/delta-variant.html#:~:text=%E2%80%A2%20Fully%20vaccinated%20people%20with,the%20virus%20to%20others.

**COMPLAINT FOR DAMAGES**

nothing more than veiled discrimination against those individuals who sought an exemption from the vaccine based on religious or medical reasons.

73. CHOMP's malicious and reckless actions are causing intense undue stress for its former employees who were forced to choose between keeping their jobs, which they love, and honoring their most deeply held religious beliefs about life, purpose, and death. CHOMP's obstructive and cavalier handling of these employees' religious and medical exemption requests is escalating the stress of these former employees each day.

## FIRST CAUSE OF ACTION

## RELIGIOUS DISCRIMINATION - VIOLATION OF GOVERNMENT

## CODE §§12940(a, l) ET. SEQ

### [Against All Defendants]

74. Plaintiffs hereby reallege and incorporate by reference paragraph 1 through 73 as though fully set forth herein.

75. At all times relevant hereto, the FEHA was in full force and effect and was binding upon Defendants and each of them.

76. It is an unlawful employment practice, for an employer or other entity covered by this part to refuse to hire or employ a person or to refuse to select a person for a training program leading to employment or to bar or to discharge a person from employment or from a training program leading to employment, or to discriminate against a person in compensation or in terms, conditions, or privileges of employment because of a conflict between the person's religious belief or observance and any employment requirement.

77. Plaintiffs each requested exemption from the mandatory COVID-19 vaccination order to accommodate sincerely held religious beliefs placing Defendants on notice of the conflict presented between the work requirement and the sincerely held religious beliefs

78. At all times relevant hereto, each Plaintiff was performing competently in the position they held with the Defendants.

79. Defendants took action or engaged in a course or pattern of conduct that, taken as a whole, materially and adversely affected the terms, conditions, or privileges of each Plaintiff's

**COMPLAINT FOR DAMAGES**

employment. As such, each Plaintiff suffered the adverse employment actions of discrimination including conduct that was and is reasonably likely to impair an employee's employment, job performance, or prospects for advancement or promotion.

80.     Plaintiffs are each informed and believe that the expression of their religious creed and the conflict between the person's religious belief or observance and the employment requirement was a substantial motivating reason and/or factor in Defendants' decision to take adverse employment actions against Plaintiffs.

81.     Defendants' conduct violates the FEHA, and such violations were a proximate cause in Plaintiffs' damage as stated below.

82.     As a result of Defendants' actions against Plaintiffs, each Plaintiff suffered and continues to suffer harm and damages in the form of economic losses, including but not limited to, lost wages and employment benefits; and substantial emotional distress; and other economic and non-economic damages.

83.     As a result of the acts of Defendants as alleged herein, Plaintiffs have also incurred and continue to incur attorneys' fees and legal expenses in an amount according to proof at the time of trial. Pursuant to California Government Code § 12965(b), Plaintiff requests a reasonable award of attorney's fees and costs, including expert fees.

84.     In doing the things alleged herein, Defendants' conduct was despicable, and Defendants acted toward Plaintiffs with malice, oppression, fraud, and with willful and conscious disregard of Plaintiffs' rights, entitling Plaintiffs to an award of punitive damages. The Defendants' conduct described herein was engaged in by managing agents for Defendants and/or ratified through its officers, directors, or managing agents against its employees.

## SECOND CAUSE OF ACTION

## RELIGIOUS DISCRIMINATION — FAILURE TO ENGAGE IN INTERACTIVE PROCESS IN VIOLATION OF GOVERNMENT CODE §12940(l) ET. SEQ.

### [Against All Defendants]

85.     Plaintiffs hereby reallege and incorporate by reference paragraph 1 through 84 as though fully set forth herein.

**COMPLAINT FOR DAMAGES**

86.     At all times relevant hereto, the FEHA was in full force and effect and was binding upon Defendants and each of them.

87.     It is an unlawful employment practice, for an employer or other entity covered by this part to demonstrates that it has explored any available reasonable alternative means of accommodating the religious belief or observance that is in conflict with a work requirement.

88.     Plaintiffs each requested exemption from the mandatory COVID-19 vaccination order to accommodate sincerely held religious beliefs placing Defendants on notice of the conflict presented between the work requirement and the sincerely held religious beliefs.

89.     At all times relevant hereto, each Plaintiff was performing competently in the position they held with the Defendants.

90.     Defendants failed to explore reasonable alternative means of accommodating the religious belief or observance that is in conflict with a work requirement.

91.     Defendants then took action or engaged in a course or pattern of conduct that, taken as a whole, materially and adversely affected the terms, conditions, or privileges of each Plaintiff's employment. As such, Plaintiff suffered the adverse employment actions of discrimination including conduct that was and is reasonably likely to impair an employee's employment, job performance, or prospects for advancement or promotion.

92.     Plaintiffs are each informed and believe that the expression of their religious creed and the conflict between the person's religious belief or observance and the employment requirement was a substantial motivating reason and/or factor in Defendants' decision to not explore any available reasonable alternative means of accommodating the religious belief or observance that is in conflict with a work requirement, and Defendants taking adverse employment actions against Plaintiffs.

93.     Defendants' conduct violates the FEHA, and such violations were a proximate cause in Plaintiffs' damage as stated below.

94.     As a result of Defendants' actions against Plaintiffs, each Plaintiff suffered and continues to suffer harm and damages in the form of economic losses, including but not limited to, lost wages and employment benefits; and substantial emotional distress; and other economic and non-economic damages.

18

**COMPLAINT FOR DAMAGES**

95.      As a result of the acts of Defendants as alleged herein, Plaintiffs have also incurred and continue to incur attorneys' fees and legal expenses in an amount according to proof at the time of trial. Pursuant to California Government Code § 12965(b), Plaintiff requests a reasonable award of attorney's fees and costs, including expert fees.

96.      In doing the things alleged herein, Defendants' conduct was despicable, and Defendants acted toward Plaintiffs with malice, oppression, fraud, and with willful and conscious disregard of Plaintiffs' rights, entitling Plaintiffs to an award of punitive damages. The Defendants' conduct described herein was engaged in by managing agents for Defendants and/or ratified through its officers, directors, or managing agents against its employees.

### THIRD CAUSE OF ACTION

### RELIGIOUS DISCRIMINATION – FAILURE TO PROVIDE REASONABLE ACCOMMODATIONS IN VIOLATION OF GOVERNMENT CODE §12940(I) ET. SEQ.

### [Against All Defendants]

97.      Plaintiffs hereby reallege and incorporate by reference paragraph 1 through 96 as though fully set forth herein.

98.      At all times relevant hereto, the FEHA was in full force and effect and was binding upon Defendants and each of them.

99.      It is an unlawful employment practice, for an employer or other entity covered by this part to provide reasonable alternative means of accommodating the religious belief or observance that is in conflict with a work requirement.

100.     Plaintiffs each requested exemption from the mandatory COVID-19 vaccination order to accommodate sincerely held religious beliefs placing Defendants on notice of the conflict presented between the work requirement and the sincerely held religious beliefs

101.     At all times relevant hereto, each Plaintiff was performing competently in the position they held with the Defendants.

102.     Defendants failed to provide reasonable alternative means of accommodating the religious belief or observance that is in conflict with a work requirement.

**COMPLAINT FOR DAMAGES**

103.    Defendants then took action or engaged in a course or pattern of conduct that, taken as a whole, materially and adversely affected the terms, conditions, or privileges of each Plaintiff's employment. As such, Plaintiff suffered the adverse employment actions of discrimination including conduct that was and is reasonably likely to impair an employee's employment, job performance, or prospects for advancement or promotion.

104.    Plaintiffs are each informed and believe that the expression of their religious creed and the conflict between the person's religious belief or observance and the employment requirement was a substantial motivating reason and/or factor in Defendants' decision to not provide any available reasonable alternative means of accommodating the religious belief or observance that is in conflict with a work requirement, and Defendants taking adverse employment actions against Plaintiffs.

105.    Defendants' conduct violates the FEHA, and such violations were a proximate cause in Plaintiffs' damage as stated below.

106.    As a result of Defendants' actions against Plaintiffs, each Plaintiff suffered and continues to suffer harm and damages it the form of economic losses, including but not limited to, lost wages and employment benefits; and substantial emotional distress; and other economic and non-economic damages.

107.    As a result of the acts of Defendants as alleged herein, Plaintiffs have also incurred and continue to incur attorneys' fees and legal expenses in an amount according to proof at the time of trial. Pursuant to California Government Code § 12965(b), Plaintiff requests a reasonable award of attorney's fees and costs, including expert fees.

108.    In doing the things alleged herein, Defendants' conduct was despicable, and Defendants acted toward Plaintiffs with malice, oppression, fraud, and with willful and conscious disregard of Plaintiffs' rights, entitling Plaintiffs to an award of punitive damages. The Defendants' conduct described herein was engaged in by managing agents for Defendants and/or ratified through its officers, directors, or managing agents against its employees.

///

///

///

20

**COMPLAINT FOR DAMAGES**

## FOURTH CAUSE OF ACTION

## HARASSMENT IN VIOLATION OF

## GOVERNMENT CODE §§12940 ET. SEQ.

### [Against All Defendants]

109.    Plaintiffs hereby reallege and incorporate by reference paragraph 1 through 108 as though fully set forth herein.

110.    At all times relevant hereto, the FEHA was in full force and effect and was binding upon Defendants and each of them. The term used under FEHA, "on the bases enumerated in this part," also means or refers to harassment on the bases of one or more of the protected characteristics under FEHA, including religion.

111.    Plaintiffs each requested exemption from the mandatory COVID-19 vaccination order to accommodate sincerely held religious beliefs placing Defendants on notice of the conflict presented between the work requirement and the sincerely held religious beliefs

112.    FEHA requires Defendants to refrain from discriminating against or harassing an employee on the basis of religion.

113.    At all times relevant hereto, each Plaintiff was performing competently in the position they held with the Defendants.

114.    Defendants violated the FEHA by harassing Plaintiffs, creating a hostile work environment, and/or failing to prevent a hostile work environment related to the expression of their sincerely held religious beliefs and the conflict they created with the work requirement.

115.    The above said acts were perpetrated upon Plaintiffs by a supervisor and/or other employees and Defendants knew or should have known of the conduct but failed to take immediate and appropriate corrective action.

116.    Defendants' harassing conduct was severe or pervasive, was unwelcome by Plaintiffs, and a reasonable person in Plaintiffs' circumstances would have considered the work environment to be hostile, intimidating, offensive, oppressive, or abusive.

117.    The above said acts of Defendants were a proximate cause in Plaintiffs' damage as stated below.

**COMPLAINT FOR DAMAGES**

118.    Plaintiffs are each informed and believe that the expression of their religious creed and the conflict between the person's religious belief or observance and the employment requirement was a substantial motivating reason and/or factor in Defendants' harassment and creation of a hostile work environment.

119.    As a result of Defendants' actions against Plaintiffs, each Plaintiff suffered and continues to suffer harm and damages it the form of economic losses, including but not limited to, lost wages and employment benefits; and substantial emotional distress; and other economic and non-economic damages.

120.    As a result of the acts of Defendants as alleged herein, Plaintiffs have also incurred and continue to incur attorneys' fees and legal expenses in an amount according to proof at the time of trial. Pursuant to California Government Code § 12965(b), Plaintiff requests a reasonable award of attorney's fees and costs, including expert fees.

121.    In doing the things alleged herein, Defendants' conduct was despicable, and Defendants acted toward Plaintiffs with malice, oppression, fraud, and with willful and conscious disregard of Plaintiff's rights, entitling Plaintiffs to an award of punitive damages. The Defendant's conduct described herein was engaged in by managing agents for Defendants and/or ratified through its officers, directors, or managing agents against its employees.

## FIFTH CAUSE OF ACTION

## RETALIATION IN VIOLATION OF GOVERNMENT CODE §12940(h, l) ET. SEQ.

### [Against All Defendants]

122.    Plaintiffs hereby reallege and incorporate by reference paragraph 1 through 121 as though fully set forth herein.

123.    At all times relevant hereto, the FEHA was in full force and effect and was binding upon Defendants and each of them.

124.    It is an unlawful employment practice, for an employer or other entity covered by this part to retaliate or otherwise discriminate against a person for requesting an accommodation for religious practice or disability, regardless of whether the request was granted.

125.    Plaintiffs each requested exemption from the mandatory COVID-19 vaccination

**COMPLAINT FOR DAMAGES**

order to accommodate sincerely held religious beliefs placing Defendants on notice of the conflict presented between the work requirement and the sincerely held religious beliefs

126.    At all times relevant hereto, each Plaintiff was performing competently in the position they held with the Defendants.

127.    Defendants then took action or engaged in a course or pattern of conduct that, taken as a whole, materially and adversely affected the terms, conditions, or privileges of each Plaintiff's employment. As such, Plaintiff suffered the adverse employment actions of discrimination including conduct that was and is reasonably likely to impair an employee's employment, job performance, or prospects for advancement or promotion.

128.    Plaintiffs are each informed and believe that the expression of their religious creed and the conflict between the person's religious belief or observance and the employment requirement was a substantial motivating reason and/or factor in Defendants' taking adverse employment actions against Plaintiffs.

129.    Defendants' conduct violates the FEHA, and such violations were a proximate cause in Plaintiffs' damage as stated below.

130.    As a result of Defendants' actions against Plaintiffs, each Plaintiff suffered and continues to suffer harm and damages it the form of economic losses, including but not limited to, lost wages and employment benefits; and substantial emotional distress; and other economic and non-economic damages.

131.    As a result of the acts of Defendants as alleged herein, Plaintiffs have also incurred and continue to incur attorneys' fees and legal expenses in an amount according to proof at the time of trial. Pursuant to California Government Code § 12965(b), Plaintiff requests a reasonable award of attorney's fees and costs, including expert fees.

132.    In doing the things alleged herein, Defendants' conduct was despicable, and Defendants acted toward Plaintiffs with malice, oppression, fraud, and with willful and conscious disregard of Plaintiff's rights, entitling Plaintiffs to an award of punitive damages. The Defendant's conduct described herein was engaged in by managing agents for Defendants and/or ratified through its officers, directors, or managing agents against its employees.

**COMPLAINT FOR DAMAGES**

**SEVENTH CAUSE OF ACTION – WRONGFUL CONSTRUCTIVE**

**DISCHARGE IN VIOLATION OF PUBLIC POLICY**

**[Against all Defendants]**

133.    Plaintiffs hereby reallege and incorporate by reference paragraph 1 through 132 as though fully set forth herein.

134.    Under California law, no employee can be terminated or subject to an adverse employment action for a reason that is in violation of a fundamental public policy, which is any articulable constitutional, statutory, or regulatory provision that is concerned with a matter impacting society at large rather than a purely personal or proprietary interest of the employee or the employer.  Moreover, the public policy must be fundamental, substantial, and well established at the time of discharge.   Plaintiffs are informed and believe, and thereupon alleges, that Defendants terminated and / or took adverse employment actions Plaintiffs in violation of the following well established, public, substantial and fundamental public policies:

(a)    The public policies set forth in Government Code § 12940, et seq., prohibiting employers from discriminating and retaliating against any individual based religious creed, and for discriminating against and discharging any individual for engaging in protected activities under Government Code § 12940;

(b)    The public policies set forth in California Labor Code § 1102.5, et seq., prohibiting employers from discriminating and retaliating against any individual on the grounds they had reported violations of state or federal law or refused to violate state or federal law.

(c) All other state and federal statutes, regulations, administrative orders and ordinances which effect society at large and which discovery will reveal or violate by Defendants.

135.    At all times mentioned in this complaint, it was a fundamental policy of the State of California that Defendants cannot discriminate and/or retaliate against any employee on the basis of religious creed, among other things.

136.    In the state of California, when an employer's discharge or other adverse employment action against an employee violates fundamental principles of public policy, the

24

**COMPLAINT FOR DAMAGES**

discharged employee may maintain a tort action and recover damages traditionally available in such actions.  (See *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167.)

137.    Plaintiffs are each informed and believe that the expression of their religious creed and the conflict between the person's religious belief or observance and the employment requirement was a substantial motivating reason and/or factor in Defendants' taking adverse employment actions against Plaintiffs.

138.    Defendants' conduct violates the FEHA, and such violations were a proximate cause in Plaintiffs' damage as stated below.

139.    As a result of Defendants' actions against Plaintiffs, each Plaintiff suffered and continues to suffer harm and damages it the form of economic losses, including but not limited to, lost wages and employment benefits; and substantial emotional distress; and other economic and non-economic damages.

140.    In doing the things alleged herein, Defendants' conduct was despicable, and Defendants acted toward Plaintiffs with malice, oppression, fraud, and with willful and conscious disregard of Plaintiffs' rights, entitling Plaintiffs to an award of punitive damages. The Defendants' conduct described herein was engaged in by managing agents for Defendants and/or ratified through its officers, directors, or managing agents against its employees.

## **PRAYER**

WHEREFORE, Plaintiffs seek judgment against Defendants, COMMUNITY HOSPITAL OF THE MONTEREY PENINSULA, and DOES 1-50, inclusive, as set forth in each cause of action and as follows:

141.    For all actual, consequential and incidental financial losses, including but not limited to loss of earnings, benefits and other compensation, according to proof, together with prejudgment interest pursuant to Civil Code Section §§ 3287 and/or 3288;

142.    For compensatory damages;

143.    For punitive damages pursuant to Civil Code § 3294 in a sum in excess of the jurisdictional minimum of the Superior Court;

**COMPLAINT FOR DAMAGES**

144. Pursuant to California Government Code § 12965(b), Plaintiff requests a reasonable award of attorney's fees and costs, including expert fees pursuant to the FEHA; California Code of Civil Procedure § 1021.5, and all other applicable statutes;

145. For costs of suit incurred; and

146. For such further relief as the Court may deem just and proper.


DATED:  November 24, 2021                    WATKINS & LETOFSKY, LLP


                                             */s/ Daniel R. Watkins*
                                    By:      Daniel R. Watkins
                                             Parisa Fishback
                                             Attorneys for Plaintiffs


PJI.009-CHOMP/Pleadings/Complaint.CHOMP

**COMPLAINT FOR DAMAGES**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### DEMAND FOR JURY TRIAL

Plaintiffs, RAYNALD ADAMS, SARAH ANDREWS, ANDREW BASHAW, LAUREN BRUCE, ANDREA CHAN, JAMES CHARLES III, HEATHER COX, ROSELLE EMPLEO-MENDOZA, JENNIFER FOLCK, CHRISTINA FOSTER, THEODORE GIBSON, TISHA GOZZELINO, KORYN GUTHRIE, LAURA HODGE, CHRISTINE KINKADE, AMY LANDRY, ANGELA MARTINEZ, STEPHANIE MCMERCURY, MICHAEL MILLER, SHILPA OZA, MICHAEL PAJULEO, ESTRAYA PELAYO, RIGOBERTO ROCHA, CHRISTINE ROCHON, FRANZ ROYO, ELISABETH SIMS, LOURDES SINCLAIR, MARIAH SMITH, SYDNEY SMITH, AMANDA STRAUTHERS, ALVARO VASQUEZ, MATTHEW WALBECK, LAVERNE WOODROW, SARAH WURTZ-HUSEBY, YASUKO YAMAMOTO hereby demand a trial by jury.

DATED:  November 24, 2021                    Respectfully Submitted,

WATKINS & LETOFSKY, LLP

*/s/ Daniel R. Watkins*

By:    Daniel R. Watkins
        Parisa Fishback
        Attorneys for Plaintiffs

PJI.009-CHOMP/Pleadings/Complaint.CHOMP

**COMPLAINT FOR DAMAGES**

# EXHIBIT 2

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
COMMUNITY HOSPITAL OF THE MONTEREY PENINSULA, and DOES 1-50, Inclusive

ELECTRONICALLY FILED BY
Superior Court of California,
County of Monterey
On 11/29/2021 1:14 PM
By: Rowena Esquerra, Deputy

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Additional Parties Attachment form is attached.

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* Monterey Superior Court 1200 Aguajito Road, Monterey, CA 92940 | CASE NUMBER: *(Número del Caso):* **21CV003717** |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Daniel R. Watkins, Esq., 2900 S. Harbor Blvd., Suite 240, Santa Ana, CA 92704 - (949) 476-9400

| DATE: *(Fecha)* **11/29/2021** | Clerk, by *(Secretario)* **/s/ Rowena Esquerra** | , Deputy *(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010).)*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation)　　☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)　☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)　☐ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☐ by personal delivery on *(date)*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Raynald Adams, et al., v. Community Hospital of the Monterey Peninsula | 21CV003717 |

### INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

| x | Plaintiff | | Defendant | | Cross-Complainant | | Cross-Defendant |
|---|---|---|---|---|---|---|---|

RAYNALD ADAMS, SARAH ANDREWS, ANDREW BASHAW, LAUREN BRUCE, ANDREA CHAN, JAMES CHARLES III, HEATHER COX, ROSELLE EMPLEO-MENDOZA, JENNIFER FOLCK, CHRISTINA FOSTER, THEODORE GIBSON, TISHA GOZZELINO, KORYN GUTHRIE, LAURA HODGE, CHRISTINE KINKADE, AMY LANDRY, ANGELA MARTINEZ, STEPHANIE MCMERCURY, MICHAEL MILLER, SHILPA OZA, MICHAEL PAJULEO, ESTRAYA PELAYO, RIGOBERTO ROCHA, CHRISTINE ROCHON, FRANZ ROYO, ELISABETH SIMS, LOURDES SINCLAIR, MARIAH SMITH, SYDNEY SMITH, AMANDA STRAUTHERS, ALVARO VASQUEZ, MATTHEW WALBECK, LAVERNE WOODROW, SARAH WURTZ-HUSEBY, YASUKO YAMAMOTO

Page __2__ of __2__

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

# EXHIBIT 3

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Daniel R. Watkins, Esq. (SBN 163571) / Parisa Fishback, Esq. (SBN 255218)<br>WATKINS & LETOFSKY, LLP<br>2900 s. Harbor Blvd., Suite 240, Santa Ana, CA 92704<br>TELEPHONE NO.: (949) 476-9400    FAX NO. *(Optional)*:<br>ATTORNEY FOR *(Name)*: Plaintiffs, Raynald Adams, et al. | **ELECTRONICALLY FILED BY**<br>Superior Court of California,<br>County of Monterey<br>On 11/29/2021 1:14 PM<br>By: Rowena Esquerra, Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF MONTEREY
STREET ADDRESS: 1200 Aguajito Road
MAILING ADDRESS: 1200 Aguajito Road
CITY AND ZIP CODE: Monterey 93940
BRANCH NAME: Monterey Courthouse

CASE NAME:
Raynald Adams, et al., v. Community Hospital of the Monterey Peninsula and Does 1-50, inclusive

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [x] Unlimited (Amount demanded exceeds $25,000)   [ ] Limited (Amount demanded is $25,000) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | **21CV003717**<br>JUDGE<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [x] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [ ] is [x] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. [x] monetary b. [ ] nonmonetary; declaratory or injunctive relief c. [ ] punitive
4. Number of causes of action *(specify)*: 6 - Religious Discrimination, Harassment, Retaliation, Wrongful Termination
5. This case [ ] is [x] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: November 24, 2021

Daniel R. Watkins
(TYPE OR PRINT NAME)

▶ /s/ Daniel R. Watkins
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courts.ca.gov

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET
CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute
**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case (non-tort/non-complex)
  Other Civil Complaint (non-tort/non-complex)
**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

# EXHIBIT 4

| **SUPERIOR COURT OF MONTEREY COUNTY**<br>**Monterey Branch,** 1200 Aguajito Road, Monterey, CA 93940 | |
|---|---|
| **Raynald Adams, et al.**<br>**vs.**<br>**Community Hospital of the Monterey Peninsula** | **CASE NUMBER**<br>**21CV003717** |
| | **Case Management Conference** |

## NOTICE OF ASSIGNMENT AND CASE MANAGEMENT CONFERENCE

**Your case is assigned for all purposes to the Honorable Carrie M. Panetta.**

Your civil case, excluding unlawful detainer and collections are a rotational assignment among three judicial officers:
Judge Thomas W. Wills; Judge Carrie M. Panetta, Judge Vanessa W. Vallarta

Your provisionally complex case or "is complex" designation at case initiation are assigned ODD/EVEN by ending number among two judicial officers:    Judge Thomas W. Wills and Judge Carrie M. Panetta

This notice, which includes the Alternative Dispute Resolution (ADR) information packet (CI-127), must be served together with the Summons and Complaint or Petition pursuant to California Rule of Court 3.221. *Parties are required to follow the complex case instructions, case management rules as outlined in California Rule of Court 3.722 and Chapter 6 of the Local Rules of Court, all can be found on the court website at* www.monterey.courts.ca.gov. A case management statement from each party or joint statement shall be filed prior to the conference as outlined in California Rule of Court 3.725.

---

**Date: March 29, 2022  Time: 9:00 AM      Department 14**

**Location: Monterey Courthouse, 1200 AGUAJITO ROAD, MONTEREY, CA 93940**

*Telephonic appearance, two days prior to the hearing, can be arranged directly through Court Call Service at 1-888-882-6878. California Rule of Court 3.670. Authorization for telephone appearance will not be given on the day of the hearing.*

---

Pursuant to statutes of the State of California, it is the responsibility of the court to establish procedures for the timely and effective disposition of civil cases.

The court is charged with the responsibility of ensuring all parties a fair and timely resolution of their disputes, and the court is in the best position to establish neutral rules and policies without adversely affecting all parties' right to a fair trial.  Effective management of the judicial system will build continuing respect by the community of government, minimize the costs to the parties and the public, and maximize the probability that cases will be timely resolved.

---

**NOTICE OF ALL PURPOSE CASE ASSIGNMENT**        [Rev. Nov 2021]

**(Civil)**

The goals of the Monterey County civil case and trial management system are:

1. To provide an effective and fair procedure for the timely disposition of civil cases;
2. To provide a mechanism to gather needed case information in order to make appropriate judicial management decisions; and
3. To establish reasonable rules and policies to require that cases reporting "ready" for trial may be tried without unnecessary delays or interruptions.

*Court proceedings are in English. If you or a witness in your case needs an interpreter, please complete Judicial Council form INT—300.* **You must file INT-300 at the first floor clerks counter (or by e-file) 15\* business days prior to your hearing.**

*Los procedimientos judiciales son en inglés. Si usted o un testigo en su caso necesita un intérprete, complete el formulario INT-300 del Consejo Judicial.* **Debe presentar el INT-300 con los empleados legales de la oficina del primer piso (o mediante archivo electrónico) 15\* días hábiles antes de su audiencia.**

---

### Alternative Dispute Resolution (CI-127)
### (INFORMATION PACKET)
### OPTIONS FOR RESOLVING YOUR DISPUTE

**There Are Alternatives to Going to Trial**

Did you know that 95 percent of all civil cases filed in court are resolved without going to trial? Many people use processes other than trial to resolve their disputes. These alternative processes, known as Alternative Dispute Resolution or ADR, are typically less formal and adversarial than trial, and many use a problem-solving approach to help the parties reach an agreement.

**Advantages of ADR**

Here are some potential advantages of using ADR:

- **Save Time:** A dispute often can be settled or decided much sooner with ADR; often in a matter of months, even weeks, while bringing a lawsuit to trial can take a year or more.
- **Save Money:** When cases are resolved earlier through ADR, the parties may save some of the money they would have spent on attorney fees, court costs, and expert's fees.
- **Increase Control over the Process and the Outcome:** In ADR, parties typically play a greater role in shaping both the process and its outcome. In most ADR processes, parties have more opportunity to tell their side of the story than they do at trial. Some ADR processes, such as mediation, allow the parties to fashion creative resolutions that are not available in a trial. Other ADR processes, such as arbitration, allow the parties to choose an expert in a particular field to decide the dispute.
- **Preserve Relationships:** ADR can be a less adversarial and hostile way to resolve a dispute. For example, an experienced mediator can help the parties effectively communicate their needs and point of view to the other side. This can be an important advantage where the parties have a relationship to preserve.
- **Increase Satisfaction:** In a trial, there is typically a winner and a loser. The loser is not likely to be happy, and even the winner may not be completely satisfied with the outcome. ADR can help the parties find win-win solutions and achieve their real goals. This, along with all of ADR's other potential advantages, may increase the parties' overall satisfaction with both the dispute resolution process and the outcome.
- **Improve Attorney-Client Relationships:** Attorneys may also benefit from ADR by being seen as problem-solvers rather than combatants. Quick, cost-effective, and satisfying resolutions are likely to produce happier clients and thus generate repeat business from clients and referrals of their friends and associates.

---

**NOTICE OF ALL PURPOSE CASE ASSIGNMENT**   [Rev. Nov 2021]

**(Civil)**

Because of these potential advantages, it is worth considering using ADR early in a lawsuit or even before you file a lawsuit.

## What Are the ADR Options?

The most commonly used ADR processes are mediation, arbitration, neutral evaluation, and settlement conferences.

## Mediation

In mediation, an impartial person called a "mediator" helps the parties try to reach a mutually acceptable resolution of the dispute. The mediator does not decide the dispute but helps the parties communicate so they can try to settle the dispute themselves. Mediation leaves control of the outcome with the parties. The Monterey County Superior Court offers a Court-Directed Mediation Program.

**Cases for Which Mediation May Be Appropriate:** Mediation may be particularly useful when parties have a relationship they want to preserve. So when family members, neighbors, or business partners have a dispute, mediation may be the ADR process to use.

Mediation is also effective when emotions are getting in the way of resolution. An effective mediator can hear the parties out and help them communicate with each other in an effective and nondestructive manner.

**Cases for Which Mediation May Not Be Appropriate:** Mediation may not be effective if one of the parties is unwilling to cooperate or compromise. Mediation also may not be effective if one of the parties has a significant advantage in power over the other. Therefore, it may not be a good choice if the parties have a history of abuse or victimization.

## Arbitration

In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are often relaxed.

Arbitration may be either "binding" or "nonbinding." Binding arbitration means that the parties waive their right to a trial and agree to accept the arbitrator's decision as final. Generally, there is no right to appeal an arbitrator's decision in binding arbitration. Nonbinding arbitration means that the parties are free to request a trial if they do not accept the arbitrator's decision. The Monterey County Superior Court offers a nonbinding judicial arbitration program.

**Cases for Which Arbitration May Be Appropriate:** Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

**Cases for Which Arbitration May Not Be Appropriate:** If parties want to retain control over how their dispute is resolved, arbitration, particularly binding arbitration, is not appropriate. In binding arbitration, the parties generally cannot appeal the arbitrator's award, even if it is not supported by the evidence or the law. Even in nonbinding arbitration, if a party requests a trial and does not receive a more favorable result at trial than in arbitration, there may be penalties.

## Neutral Evaluation

In neutral evaluation, each party gets a chance to present the case to a neutral person called an "evaluator." The evaluator then gives an opinion on the strengths and weaknesses of each party's evidence and arguments and about how the dispute could be resolved. The evaluator is often an expert in the subject matter of the dispute. Although the evaluator's opinion is nonbinding, the parties typically use it as a basis for trying to negotiate a resolution of the dispute.

**Cases for Which Neutral Evaluation May Be Appropriate:** Neutral evaluation may be most appropriate in cases in which there are technical issues that require expertise to resolve or the only significant issue in the case is the amount of damages.

**Cases for Which Neutral Evaluation May Not Be Appropriate:** Neutral evaluation may not be appropriate when there are significant personal or emotional barriers to resolving the dispute.

## Settlement Conference

Settlement conferences may be either mandatory or voluntary. In both types of settlement conferences, the parties and their attorneys meet with a judge or neutral person called a "settlement officer" to discuss possible settlement of their dispute. The judge or settlement officer does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Settlement

---

conferences are appropriate in any case where settlement is an option. Mandatory settlement conferences are often held close to the date a case is set

**NOTICE OF ALL PURPOSE CASE ASSIGNMENT**   [Rev. Nov 2021]

**(Civil)**

# EXHIBIT 5

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Daniel R. Watkins, Esq. | SBN: 163571<br>Watkins & Letofsky LLP<br>2900 S Harbor Blvd Ste. 240  Santa Ana, CA 927046418<br><br>TELEPHONE NO.: (949) 476-9400 | FAX NO. (949) 476-9407 | E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):* Plaintiffs: Raynald Adams; et al. | ELECTRONICALLY FILED BY<br>Superior Court of California,<br>County of Monterey<br>On 12/15/2021 4:39 PM<br>By: Justin Borello, Deputy |

| MONTEREY COUNTY SUPERIOR COURT | |
|---|---|
| STREET ADDRESS: 1200 AGUAJITO RD. | |
| MAILING ADDRESS: | |
| CITY AND ZIP CODE: MONTEREY, CA 93940 | |
| BRANCH NAME: MONTEREY BRANCH | |

| PLAINTIFF:  Raynald Adams; et al. | |
|---|---|
| DEFENDANT:  Community Hospital of the Monterey Peninsula | CASE NUMBER: |
| | 21CV003717 |

| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No.: |
|---|---|
| | PJI.009 |

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   - a. ☑ Summons
   - b. ☑ Complaint
   - c. ☐ Alternative Dispute Resolution (ADR) package
   - d. ☐ Civil Case Cover Sheet *(served in complex cases only)*
   - e. ☐ Cross-complaint
   - f. ☑ other *(specify documents):* Civil Case Cover Sheet; Notice of Assignment and Case Management Conference
3. a. Party served *(specify name of party as shown on documents served):*
   **Community Hospital of the Monterey Peninsula**

   b. ☑ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
   **Tim Nylen - Agent for Service**

4. Address where the party was served:  **23625 Holman Hwy**
   **Monterey, CA 93940-5902**

5. I served the party *(check proper box)*
   - a. ☐ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):*      (2) at *(time):*
   - b. ☑ **by substituted service.** On *(date):* **12/14/2021** at *(time):* **10:14 AM** I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3b):*
     **Rachel Milles - Patient Information Center - Person Apparently in Charge**

     | Age: 38 yrs | Weight: 130 lbs | Hair: Black | Sex: Female |
     |---|---|---|---|
     | Height: 5'2" | Eyes: | Race: Hispanic | |

     - (1) ☑ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him of her of the general nature of the papers.
     - (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.
     - (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him of her of the general nature of the papers.
     - (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., §415.20). I mailed the documents on
       *(date):*  from *(city):*                              or ☑ a declaration of mailing is attached.
     - (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

| Form Approved for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev. January 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | Code of Civil Procedure, § 417.10<br>**POS010-1/229763** |
|---|---|---|

| PETITIONER: Raynald Adams; et al. | CASE NUMBER: |
|---|---|
| RESPONDENT: Community Hospital of the Monterey Peninsula | 21CV003717 |

c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

(1) on *(date):*      (2) from *(city):*

(3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.) (Code Civ. Proc., § 415.30.)

(4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐ **by other means** *(specify means of service and authorizing code section):*

     ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

a. ☐ as an individual defendant.

b. ☐ as the person sued under the fictitious name of *(specify):*

c. ☐ as occupant.

d. ☑ On behalf of *(specify):* **Community Hospital of the Monterey Peninsula**

under the following Code of Civil Procedure section:

☑ 416.10 (corporation)      ☐ 415.95 (business organization, form unknown)
☐ 416.20 (defunct corporation)      ☐ 416.60 (minor)
☐ 416.30 (joint stock company/association)      ☐ 416.70 (ward or conservatee)
☐ 416.40 (association or partnership)      ☐ 416.90 (authorized person)
☐ 416.50 (public entity)      ☐ 415.46 (occupant)
     ☐ other:

7. **Person who served papers**

a. Name: **Jordan Massolo - DDS Legal Support**

b. Address: **2900 Bristol Street  Costa Mesa, CA 92626**

c. Telephone number: **(714) 662-5555**

d. **The fee** for service was: **$ 102.27**

e. I am:

(1) ☐ not a registered California process server.

(2) ☐ exempt from registration under Business and Professions Code section 22350(b).

(3) ☑ registered California process server:

     (i) ☐ owner    ☐ employee    ☑ independent contractor.

     (ii) Registration No.: **PSO227**

     (iii) County: **Monterey**

8. ☑ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

     or

9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: **12/15/2021**

**DDS Legal Support**
**2900 Bristol Street**
**Costa Mesa, CA 92626**
**(714) 662-5555**
**www.ddslegal.com**

_DDS_

_____
**Jordan Massolo**
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

▶ _____
(SIGNATURE)

POS-010 [Rev January 1, 2007]

**PROOF OF SERVICE OF SUMMONS**

Page 2 of 2

POS-010/229763

| *Attorney or Party without Attorney:* | *FOR COURT USE ONLY* |
|---|---|
| Daniel R. Watkins, Esq., SBN: 163571<br>Watkins & Letofsky  LLP<br>2900 S Harbor Blvd Ste. 240<br>Santa Ana, CA 927046418<br>*TELEPHONE No.:* (949) 476-9400     *E-MAIL ADDRESS (Optional):*<br>                                      *FAX No. (Optional):* (949) 476-9407<br>*Attorney for:* Plaintiffs Raynald Adams; et al. | |

*Ref No. or File No.:*
PJI.009

*Insert name of Court, and Judicial District and Branch Court:*
MONTEREY COUNTY SUPERIOR COURT - MONTEREY BRANCH

*Plaintiff:* Raynald Adams; et al.

*Defendant:* Community Hospital of the Monterey Peninsula

| **PROOF OF SERVICE<br>BY MAIL** | HEARING DATE: | TIME: | DEPT.: | CASE NUMBER:<br>21CV003717 |
|---|---|---|---|---|

1. I am over the age of 18 and not a party to this action.  I am employed in the county where the mailing occured.

2. I served copies of the Summons; Complaint; Civil Case Cover Sheet; Notice of Assignment and Case Management Conference;

3. By placing a true copy thereof enclosed in a sealed envelope, with First Class postage thereon fully prepaid, in the United States Mail at Costa Mesa, California, addressed as  follows:

    a. Date of Mailing:            December 15, 2021
    b. Place of Mailing:          Costa Mesa, CA
    c. Addressed as follows:     Community Hospital of the Monterey Peninsula
                                     ATTENTION: Tim Nylen - Agent for Service
                                       23625 Holman Hwy
                                     Monterey, CA 93940-5902

I am readily familiar with the firm's practice for collection and processing of documents for mailing.  Under that practice, it would be  deposited within the United States Postal Service, on that same day, with postage thereon fully prepaid at Costa Mesa, California in the ordinary course of  business.

Fee for Service: **$ 102.27**
    **DDS Legal Support**
    **2900 Bristol Street**
*DDS*  **Costa Mesa, CA 92626**
    **(714) 662-5555**
    **Ref: PJI.009**

I declare under penalty of perjury under the laws of the The State of California that the foregoing information contained in the return of service and statement of service fees is true and correct and that this declaration was executed on  **December 15, 2021**.

Signature: _____

**Monica Figueroa**



**PROOF OF SERVICE BY MAIL**

Order#: 229763/mailproof

# EXHIBIT 6

1    CHRISTOPHER E. PANETTA, Esq. (SBN 175127)
2    ELIZABETH R. LEITZINGER, Esq. (SBN 259677)
     FENTON & KELLER
3    A Professional Corporation
     2801 Monterey-Salinas Highway
     Post Office Box 791
4    Monterey, California  93942-0791
     Telephone:     (831) 373-1241
5    Facsimile:     (831) 373-7219
     Email: CPanetta@FentonKeller.com
6    Email: ELeitzinger@FentonKeller.com

7    *Additional counsel continued on next page*

8    Attorneys for Defendant COMMUNITY HOSPITAL OF
     THE MONTEREY PENINSULA
9

ELECTRONICALLY FILED BY
Superior Court of California,
County of Monterey
On 1/20/2022 3:27 PM
By: Rosa Loiudice, Deputy

10         SUPERIOR COURT OF THE STATE OF CALIFORNIA

11            FOR THE COUNTY OF MONTEREY

12

13    RAYNALD ADAMS, SARAH
     ANDREWS, ANDREW BASHAW,
14    LAUREN BRUCE, ANDREA CHAN,
     JAMES CHARLES III, HEATHER COX,
15    ROSELLE EMPLEO-MENDOZA,
     JENNIFER FOLCK, CHRISTINA
16    FOSTER, THEODORE GIBSON, TISHA
     GOZZELINO, KORYN GUTHRIE,
17    LAURA HODGE, CHRISTINE
     KINKADE, AMY LANDRY, ANGELA
18    MARTINEZ, STEPHANIE
     MCMERCURY, MICHAEL MILLER,
19    SHILPA 0ZA, MICHAEL PAJULEO,
     ESTRAYA PELAYO, RIGOBERTO
20    ROCHA, CHRISTINE ROCHON, FRANZ
     ROYO, ELISABETH SIMS, LOURDES
21    SINCLAIR, MARIAH SMITH, SYDNEY
     SMITH, AMANDA STRAUTHERS,
22    ALVARO VASQUEZ, MATTHEW
     WALBECK, LAVERNE WOODROW,
23    SARAH WURTZ-HUSEBY, YASUKO
     YAMAMOTO,
24
                 Plaintiffs,
25        v.
26    COMMUNITY HOSPITAL OF THE
     MONTEREY PENINSULA, and DOES 1
27    through 50, inclusive,
28               Defendants.

Case No.:  21CV003717

**DEFENDANT'S ANSWER TO
PLAINTIFFS' COMPLAINT FOR
DAMAGES**

Complaint Filed: November 29, 2021

1   JEFFREY A. BERMAN, Esq. (SBN 50114)
    KIRAN A. SELDON, Esq. (SBN 212803)
2   SEYFARTH SHAW LLP
    2029 Century Park East, Suite 3500
3   Los Angeles, California 90067-3021
    Telephone:     310-201-1541
4   Facsimile:     310-282-6986
    Email: JBerman@seyfarth.com
5   Email: KSeldon@seyfarth.com

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendant COMMUNITY HOSPITAL OF THE MONTEREY PENINSULA ("Community Hospital" or "Defendant") hereby answers plaintiffs' Complaint for Damages as follows:

## GENERAL DENIAL

1.      Pursuant to the provisions of California Code of Civil Procedure section 431.30(d), Defendant denies generally and specifically each and every allegation in plaintiffs' Complaint, and the whole thereof, including each and every purported cause of action contained therein, and denies that plaintiffs sustained or will sustain damages in the sum or sums alleged, or any other sums, or at all.

2.      Further, Defendant denies that plaintiffs have sustained any injury, damage or loss, if any, by reason of any act, omission or negligence on the part of Defendant or its agents or employees.

## AFFIRMATIVE DEFENSES

In further answer to plaintiffs' Complaint, Defendant alleges the following separate and distinct affirmative or additional defenses ("Defenses").  In asserting these Defenses, Defendant does not assume the burden of proof as to matters that, pursuant to law, are plaintiffs' burden to prove.  Defendant hereby gives notice that it intends to rely upon such other and further affirmative relief and additional defenses as may become available during discovery in this action and Defendant reserves the right to amend this Answer to assert any such defenses.

## FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Cause of Action)

3.      The Complaint and each and every cause of action therein fails to state facts sufficient to constitute a cause of action upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE
### (Statute of Limitations)

4.      The Complaint and each and every cause of action therein is barred, in whole or in part, by the applicable statute of limitations, including but not limited to Code of Civil Procedure sections 335.1, 337, 338, 339, 340, and 343, and Government Code section 12960.

- 3 -

FENTON & KELLER
ATTORNEYS AT LAW
MONTEREY

{MAL-01208877;1}

DEFENDANT'S ANSWER TO PLAINTIFFS' COMPLAINT FOR DAMAGES / CASE NO.: 21CV003717

1
2

## THIRD AFFIRMATIVE DEFENSE

### (Failure to Mitigate Damages)

3       5.      Although Defendant expressly alleges that it is not guilty of any negligence or

4   misconduct, it alleges alternatively that if plaintiffs suffered any damages proximately caused by

5   Defendant, said damages could and should have been mitigated by reasonable efforts on the part

6   of the plaintiffs; due to their failure to take reasonable steps to prosecute and/or defend their

7   interests, their damages have been exacerbated wholly due to their own fault and that of their

8   agents and attorneys, and therefore they are barred from obtaining recovery from Defendant for

9   any such damages and/or any damages awarded to plaintiffs should be reduced accordingly.

10

## FOURTH AFFIRMATIVE DEFENSE

11

### (Equitable Estoppel)

12      6.      The Complaint and each and every cause of action therein is barred, in whole or in

13  part, by the acts, omissions, representations and courses of conduct by plaintiffs, which Defendant

14  was led to rely on to its detriment, thereby barring under the doctrine of equitable estoppel any

15  causes of action asserted by plaintiffs.

16

## FIFTH AFFIRMATIVE DEFENSE

17

### (Reduction of Damages)

18      7.      Plaintiffs are entirely, or alternatively, partially, barred from recovery in this action

19  to the extent that they have received any consideration from Defendant or from anyone else in

20  satisfaction of any purported claim against Defendant.

21

## SIXTH AFFIRMATIVE DEFENSE

22

### (Third Party Liability)

23      8.      Should it be found that Defendant is liable, in any matter for any damages stated

24  by plaintiffs, which Defendant denies, it alleges that such damages were proximately caused

25  and/or contributed to by parties other than Defendant, whether served or not served in this case,

26  and/or by other persons or entities not presently parties to this action.  It is necessary that the

27  proportionate degree of negligence, fault, and/or legal responsibility of each and every person or

28  entity be determined and prorated and that any judgment that may be rendered against Defendant

1  be reduced not only by the degree of negligence, fault or other legal responsibility attributable to

2  plaintiffs, but by the total of that degree of negligence, fault and/or other legal responsibility

3  found to exist as to other person(s) and/or entities as well.

4  **SEVENTH AFFIRMATIVE DEFENSE**

5  **(Managerial Privilege)**

6       9.     Any and all conduct of which plaintiffs complain and which is attributed to

7  Defendant or its agents or employees was a just and proper exercise of management's discretion

8  on the part of Defendant or its agents or employees and was undertaken for a fair and honest

9  reason and regulated by good faith and probable causer under the circumstances existing at all

10  times mentioned in the Complaint and Defendant is, therefore, immune from any liability.

11  **EIGHTH AFFIRMATIVE DEFENSE**

12  **(Unclean Hands)**

13       10.    The Complaint and each and every cause of action therein is barred, in whole or in

14  part, by the doctrine of unclean hands by reason of plaintiffs' conduct or actions.

15  **NINTH AFFIRMATIVE DEFENSE**

16  **(Workers' Compensation as Exclusive Remedy)**

17       11.    The Complaint and each and every cause of action therein is barred, in whole or in

18  part, by the exclusivity provisions of the Workers' Compensation Act as set forth in the

19  California Labor Code, including but not limited to California Labor Code sections 3601, et seq.

20  **TENTH AFFIRMATIVE DEFENSE**

21  **(Failure to Exhaust Administrative Remedies)**

22       12.    The Complaint and each and every cause of action therein is barred, in whole or in

23  part, because plaintiffs have failed to satisfy the statutory prerequisites to sue and to exhaust

24  administrative remedies under the California Fair Employment and Housing Act, California

25  Government Code section 12940 et seq., the Equal Employment Opportunity Commission, 42

26  U.S.C. section 2000(e), et seq. (Title VII of the Civil Rights Act of 1964), and other applicable

27  administrative remedies.

28  / / /

1

**ELEVENTH AFFIRMATIVE DEFENSE**

2

**(Failure to Exhaust Internal Remedies)**

3        13.     The Complaint and each and every cause of action therein is barred, in whole or in

4   part, because plaintiffs failed to exhaust available internal remedies and grievance procedures as

5   set forth in Defendant's personnel policies, which were available to plaintiffs at all times

6   mentioned in the Complaint.

7

**TWELFTH AFFIRMATIVE DEFENSE**

8

**(Misjoinder of Plaintiffs)**

9        14.     The Complaint and each and every cause of action therein is defective and barred,

10   in whole or in part, because plaintiffs are improperly joined under Code of Civil Procedure

11   sections 378 and 430.10(d) as they do not assert any right to relief jointly, severally, or in the

12   alternative, in respect of or arising out of the same transaction, occurrence, or series of

13   transactions or occurrences and if any question of law or fact common to all these persons will

14   arise in the action; or they do not have a claim, right, or interest adverse to Defendant in the

15   property or controversy which is the subject of the action.

16

**THIRTEENTH AFFIRMATIVE DEFENSE**

17

**(Variance from Administrative Charge)**

18        15.     The Complaint and each and every cause of action therein is barred in whole or in

19   part, to the extent that plaintiffs' claims under the California Fair Employment and Housing Act

20   are barred to the extent they vary from the allegations in the administrative charge, if any, filed

21   with the appropriate agency.

22

**FOURTEENTH AFFIRMATIVE DEFENSE**

23

**(Business Justification)**

24        16.     Defendant is informed and believes and thereon alleges that the activities

25   undertaken with respect to plaintiffs, if any, were privileged or otherwise justified, as such

26   activities were proper, fair and legitimate business activities and/or due to business-related

27   reasons which were neither, arbitrary, capricious nor unlawful.

28   / / /

FENTON & KELLER
ATTORNEYS AT LAW
MONTEREY

{MAL-01208877;1}

DEFENDANT'S ANSWER TO PLAINTIFFS' COMPLAINT FOR DAMAGES / CASE NO.: 21CV003717

1                                     **FIFTEENTH AFFIRMATIVE DEFENSE**

2                                                 **(Mixed Motive)**

3       17.    Defendant alleges that if it is found that its decisions related to the

4 accommodations it provided to plaintiffs was motivated by both discriminatory and non-

5 discriminatory reasons (which allegation is made for the purposes of this pleading and shall not

6 constitute an admission), Defendant would have made the same decisions regarding the

7 accommodations provided to plaintiffs regardless of any actions which may have constituted

8 discrimination, if any there were.

9                                  **SIXTEENTH AFFIRMATIVE DEFENSE**

10                       **(Legitimate, Non-Discriminatory Reason)**

11       18.    Defendant alleges that at all times mentioned in the Complaint, Defendant acted

12 lawfully and within its legal rights, with a good faith belief in the exercise of that right, and in the

13 furtherance of a legitimate business purpose.  Further, Defendant acted in good faith in the honest

14 belief that the acts, conduct and communications, if any, of the Defendant were justified under the

15 circumstances based on information reasonably available to Defendant.

16                            **SEVENTEENTH AFFIRMATIVE DEFENSE**

17      **(Failure to Use Preventative and Corrective Measures Provided)**

18       19.    The Complaint and each and every cause of action therein is barred in whole or in

19 part, because Defendant has, at all times, taken reasonable steps to prevent and correct workplace

20 discrimination, harassment, and retaliation; that plaintiffs unreasonably failed to use the

21 preventive and corrective measures that Defendant provided; and the reasonable use of those

22 measures would have avoided the damages alleged by plaintiffs.

23                           **EIGHTEENTH AFFIRMATIVE DEFENSE**

24                        **(No Severe or Pervasive Conduct)**

25       20.    The Complaint and each and every cause of action therein is barred, in whole or in

26 part, because Defendant did not engage in any conduct that was pervasive and/or severe such that

27 it altered the conditions of plaintiffs' employment to create a hostile working environment.

28 / / /

FENTON & KELLER
ATTORNEYS AT LAW
MONTEREY

{MAL-01208877;1}

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NINETEENTH AFFIRMATIVE DEFENSE

### (Legally-Mandated Conduct)

21.     The Complaint and each and every cause of action therein is barred, in whole or in part, because any and all conduct of which plaintiffs complain and which is attributed to Defendant was a legally-mandated course of action.

## TWENTIETH AFFIRMATIVE DEFENSE

### (Plaintiffs Not Qualified for FEHA Protection)

22.     The Complaint and each and every cause of action therein is barred, in whole or in part, because plaintiffs are not protected individuals under the Fair Employment and Housing Act as they do not have sincerely-held religious beliefs that prevent them from being vaccinated against COVID-19.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

### (Inability to Perform Essential Functions of Job)

23.     The Complaint and each and every cause of action therein is barred, in whole or in part, because plaintiffs are unable to perform the essential functions of their jobs, with or without reasonable accommodation.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

### (Reasonable Accommodation Provided)

24.     The Complaint and each and every cause of action therein is barred, in whole or in part, because Defendant made all accommodations that were reasonably necessary to accommodate plaintiffs' perceived and/or claimed religious status and request for accommodation as required by the California Fair Employment and Housing Act.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

### (Engaged in Good Faith Interactive Process)

25.     The Complaint and each and every cause of action therein is barred, in whole or in part, because Defendant engaged in a timely, good faith, interactive process with plaintiffs to determine if an effective reasonable accommodation was available.  To the extent that plaintiffs failed to timely and in good-faith engage in the interactive process, Defendant cannot be liable for

1   any alleged failure to engage in the interactive process.

2                    **TWENTY-FOURTH AFFIRMATIVE DEFENSE**

3                             **(Undue Hardship/Direct Threat)**

4          26.    Defendant maintains that it made all accommodations that were reasonably

5   necessary to accommodate plaintiffs' perceived or stated religious beliefs.  However, if any

6   accommodation could not be provided to each plaintiff individually, it was because providing

7   such an accommodation would have created an undue hardship for Defendant as well as an undue

8   hardship and a direct threat to the health and safety of Defendant's employees, the patient

9   population Defendant serves, and the family members and visitors who enter the hospital.

10                    **TWENTY-FIFTH AFFIRMATIVE DEFENSE**

11                             **(Lack of Reasonable Care)**

12         27.    Plaintiffs are precluded from asserting their Complaint and the causes of action

13  therein because they have failed to exercise reasonable care to avoid the injuries they purportedly

14  suffered.

15                    **TWENTY-SIXTH AFFIRMATIVE DEFENSE**

16                             **(After-Acquired Evidence)**

17         28.    The Complaint and each and every cause of action therein is barred, in whole or in

18  part, based on after-acquired evidence that Defendant has presently and/or may acquire during the

19  course of this litigation.

20                    **TWENTY-SEVENTH AFFIRMATIVE DEFENSE**

21                                     **(Waiver)**

22         29.    The Complaint and each and every cause of action therein is barred, in whole or in

23  part, by the doctrine of waiver as plaintiffs have waived any and all claims that they may have

24  had or have against Defendant arising from the transactions and occurrences set forth in the

25  Complaint.

26                    **TWENTY-EIGHTH AFFIRMATIVE DEFENSE**

27                             **(Due Process Clauses)**

28         30.    Plaintiffs' request for the imposition of punitive damages in this matter would

FENTON & KELLER
ATTORNEYS AT LAW
MONTEREY

{MAL-01208877;1}
                                          - 9 -
DEFENDANT'S ANSWER TO PLAINTIFFS' COMPLAINT FOR DAMAGES / CASE NO.: 21CV003717

deprive Defendant of its property without due process of law under the California Constitution and the United States Constitution.

## TWENTY-NINTH AFFIRMATIVE DEFENSE

### (No Entitlement to Punitive Damages)

31.     The Complaint and each and every cause of action therein fails to state facts sufficient to constitute a cause of action upon which punitive damages may be granted pursuant to California Civil Code section 3294 because Defendant's actions were not willful, malicious, intentional, tortious or reckless.

## THIRTIETH AFFIRMATIVE DEFENSE

### (Contributory Negligence)

32.     Defendant is informed and believes and thereon alleges that plaintiffs' conduct concerning the matters alleged in the Complaint constitutes carelessness, negligence, misconduct and/or bad faith or plaintiffs were otherwise at fault and the resulting injuries, if any sustained by plaintiffs were proximately caused and contributed to in whole or in part by the conduct of plaintiffs and/or other third parties, and thus barring or limiting plaintiffs' right of recovery.

## THIRTY-FIRST AFFIRMATIVE DEFENSE

### (Acting Under the Direction, Instruction, and Control of Federal Authorities)

33.     Defendant alleges that it was acting under the direction, instruction and control of federal authorities to address the on-going federal effort and national state of emergency to contain the COVID-19 pandemic and prevent the spread of the COVID-19 virus. All actions taken by Defendant in preparation for and response to the COVID-19 pandemic, were taken in an effort to assist, or help carry out, the duties or tasks as ordered by the Center for Disease Control (CDC) and Centers for Medicare & Medicaid Services (CMS), and California Department Public Health surveyors pursuant to their contract with CMS and performed pursuant to the direct orders and comprehensive and detailed directives issued by these agencies. Defendant was acting at the direction of the federal government to prevent, treat and contain COVID-19 at the facility and in its treatment of its patients.

/ / /

FENTON & KELLER
ATTORNEYS AT LAW
MONTEREY

{MAL-01208877;1}

- 10 -

1

**THIRTY-SECOND AFFIRMATIVE DEFENSE**

2

**(Acting Under the Direction, Instruction, and Control of State and Local Authorities)**

3          34.      Defendant alleges that it was acting under the direction, instruction and control of

4   state and local authorities to address the on-going state of emergency to contain the COVID-19

5   pandemic and prevent the spread of the COVID-19 virus. All actions taken by Defendant in

6   preparation for and response to the COVID-19 pandemic, were taken in an effort to assist, or help

7   carry out, the duties or tasks as ordered by the California Department Public Health and

8   performed pursuant to the direct orders and comprehensive and detailed directives issued by these

9   agencies. Defendant was acting at the direction of the federal and State government to prevent,

10   treat and contain COVID-19 at the facility and in its treatment of its patients.

11

**THIRTY-THIRD AFFIRMATIVE DEFENSE**

12

**(No Violation of Public Policy)**

13          35.      The Complaint and each and every cause of action therein is barred, in whole or in

14   part, because Defendant's motivation or reason for engaging in the conduct alleged in the

15   Complaint (which allegation is made for the purposes of this pleading and shall not constitute an

16   admission), and each purported cause of action alleged therein, did not violate the public policy of

17   the State of California.

18

**THIRTY-FOURTH AFFIRMATIVE DEFENSE**

19

**(No Violation of Public Policy/Good Cause)**

20          36.      The Complaint and each and every cause of action therein is barred, in whole or in

21   part, because all of the acts of Defendant affecting the terms and conditions of plaintiffs'

22   employment were privileged and done with good cause.

23

**THIRTY-FIFTH AFFIRMATIVE DEFENSE**

24

**(Frivolous Claims)**

25          37.      Defendant is informed and believes and thereon alleges that plaintiffs' claims

26   against Defendant are frivolous, unreasonable, and groundless.  Accordingly, Defendant should

27   recover all costs and attorneys' fees incurred herein.

28   / / /

FENTON & KELLER
ATTORNEYS AT LAW
MONTEREY

- 11 -

{MAL-01208877;1}

DEFENDANT'S ANSWER TO PLAINTIFFS' COMPLAINT FOR DAMAGES / CASE NO.: 21CV003717

1

**THIRTY-SIXTH AFFIRMATIVE DEFENSE**

2

**(Attorneys' Fees)**

3    38.    Defendant alleges that plaintiffs fail to state a claim upon which an award of

4    attorneys' fees may be granted.

5

**THIRTY-SEVENTH AFFIRMATIVE DEFENSE**

6

**(Plaintiffs' Consent)**

7    39.    The Complaint and each and every cause of action therein is barred, in whole or in

8    part, because plaintiffs consented to the conduct alleged in the Complaint.

9

**THIRTY-EIGHTH AFFIRMATIVE DEFENSE**

10

**(Laches)**

11    40.    The Complaint and each and every cause of action therein is barred, in whole or in

12    part, by the doctrine of laches as plaintiffs have delayed in asserting their rights, and, because of

13    this delay, they are no longer entitled to bring an equitable claim.

14

**THIRTY-NINTH AFFIRMATIVE DEFENSE**

15

**(Election of Remedies)**

16    41.    The Complaint and each and every cause of action therein is barred, in whole or in

17    part, by the doctrine of election of remedies because plaintiffs have two co-existing but

18    inconsistent remedies and elected to pursue a separate remedy other than the Complaint.

19

**FORTIETH AFFIRMATIVE DEFENSE**

20

**(Res Judicata/Collateral Estoppel)**

21    42.    The Complaint and each and every cause of action therein is barred, in whole or in

22    part, by the doctrine of res judicata and/or collateral estoppel.

23

**FORTY-FIRST AFFIRMATIVE DEFENSE**

24

**(Judicial Estoppel)**

25    43.    The Complaint and each and every cause of action therein is barred, in whole or in

26    part, by the doctrine of judicial estoppel.

27    / / /

28    / / /

FENTON & KELLER
ATTORNEYS AT LAW
MONTEREY

{MAL-01208877;1}

- 12 -

DEFENDANT'S ANSWER TO PLAINTIFFS' COMPLAINT FOR DAMAGES / CASE NO.: 21CV003717

**FORTY-SECOND AFFIRMATIVE DEFENSE**

**(PREP Act Preemption and Immunity)**

44.     The Complaint and each and every cause of action therein is barred, in whole or in part, because, given the ongoing public-health emergency related to COVID-19, Defendant is immune from suit and liability under federal and state law, and plaintiffs' Complaint and each purported cause of action thereunder is barred and preempted by the Public Readiness and Emergency Preparedness Act, 42 U.S.C. § 247d-6d, et seq. (the "PREP Act").

**FORTY-THIRD AFFIRMATIVE DEFENSE**

**(No Jurisdiction Over Action)**

45.     The Complaint and each and every cause of action therein is barred, in whole or in part, because this Court lacks jurisdiction over any surviving causes of action set forth in plaintiffs' Complaint for death or serious physical injury proximately caused by willful misconduct because, to the extent such alleged causes of action survive PREP Act preemption (as described in Defendant's Forty Second Affirmative Defense), such alleged causes of action are required to be brought and maintained only in the United States District Court for the District of Columbia pursuant to the PREP Act.  (42 U.S.C. § 247d-6d(d)(1), (e)(1).)

**FORTY-FOURTH AFFIRMATIVE DEFENSE**

**(Federal-Officer Preemption and Immunity)**

46.     The Complaint and each and every cause of action therein is barred, in whole or in part, and preempted by 28 U.S.C. § 1442(a)(1), and Defendant is therefore immune from suit and liability, because all of plaintiffs' claims against Defendant are for or relate to Defendant's acts or conduct while Defendant was acting under the United States or a federal officer, and Defendant has one or more defenses that are based in federal law, which arise out of Defendant's compliance with the demands of the United States or a federal office.

**FORTY-FIFTH AFFIRMATIVE DEFENSE**

**(Constitutional Violations)**

47.     The Complaint and each and every cause of action therein is barred, in whole or in part, by the U.S. Constitution and the California Constitution, including the Establishment

FENTON & KELLER
ATTORNEYS AT LAW
MONTEREY

{MAL-01208877;1}

1    Clauses, the Free Exercise Clauses, and the rights to speech and assembly, and Article 1, Section

2    4 of the California Constitution.

3                        **FORTY-SIXTH AFFIRMATIVE DEFENSE**

4              **(Violation of California Government Code §12940(l)(3))**

5         48.    The Complaint and each and every cause of action therein is barred, in whole or in

6    part, by California Government Code section 12940(l)(3) because an accommodation is not

7    required if it would result in a violation of the FEHA or any other law prohibiting discrimination

8    or protecting civil rights, including subdivision (b) of Section 51 of the Civil Code and Section

9    11135 of the Government Code.

10                        **UNKNOWN AFFIRMATIVE DEFENSES**

11        49.    Defendant currently has insufficient knowledge or information on which to form a

12   belief as to whether it may have additional, as yet unstated, defenses available.   Defendant

13   expressly reserves its right to assert additional affirmative defenses in the event discovery

14   indicates they would be appropriate.

15   / / /

16   / / /

17   / / /

18   / / /

19   / / /

20   / / /

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

FENTON & KELLER
ATTORNEYS AT LAW
MONTEREY

{MAL-01208877;1}

- 14 -

DEFENDANT'S ANSWER TO PLAINTIFFS' COMPLAINT FOR DAMAGES / CASE NO.: 21CV003717

1

## **PRAYER FOR RELIEF**

2      50. WHEREFORE, Defendant prays for judgment from this Court as follows:

3          a.   That plaintiffs take nothing by way of their Complaint and be granted no

4   relief in this action;

5          b.   That the Complaint be dismissed with prejudice and that judgment be

6   entered against plaintiffs and in favor of Defendant on each cause of action;

7          c.   That Defendant be awarded its attorneys' fees and costs of suit herein to

8   the extent permitted under applicable law; and

9          d.   Such other and further relief as the Court deems appropriate and proper

10
Dated: January 20, 2022                    FENTON & KELLER
11

12                                  By:  _/s/ Elizabeth Leitzinger_____
                                        Christopher E. Panetta
13                                      Elizabeth R. Leitzinger
                                        Attorneys for Defendant
14                                      COMMUNITY HOSPITAL OF THE
                                        MONTEREY PENINSULA
15

16
Dated: January 20, 2022                    SEYFARTH SHAW LLP
17

18                                  By:  _/s/ Jeffrey A. Berman_____
                                        Jeffrey A. Berman
19                                      Kiran A. Seldon
                                        Attorneys for Defendant
20                                      COMMUNITY HOSPITAL OF THE
                                        MONTEREY PENINSULA
21

22

23

24

25

26

27

28

1

## PROOF OF SERVICE

2

I, Julia V. Smith, declare:

3

I am a citizen of the United States and employed in Monterey County, California.  I am

4

over the age of eighteen years and not a party to the within-entitled action.  My business address is 2801 Monterey-Salinas Highway, Post Office Box 791, Monterey, California 93942-0791.  On

5

January 20, 2022, I served a copy of the within document(s):

6

**DEFENDANT'S ANSWER TO PLAINTIFFS' COMPLAINT FOR DAMAGES**

7

☒        (**BY U.S. MAIL**) by placing the document(s) listed above in a sealed envelope

8

with postage thereon fully prepaid, the United States mail at Monterey, California addressed as set forth below.

9

☐        (**BY OVERNIGHT SERVICE**) by placing the document(s) listed above in a

10

sealed <u>Federal Express</u> envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a <u>Federal Express</u> agent for delivery.

11

12

☒        (**BY EMAIL**) by transmitting via e-mail or electronic transmission the

document(s) listed above to the person(s) at the e-mail address(es) set forth

13

below.

14

| <u>Counsel for Plaintiffs</u> | <u>Co-Counsel for Defendant COMMUNITY</u> |
|---|---|
| Daniel R. Watkins, Esq. | <u>HOSPITAL OF THE MONTEREY</u> |
| Parisa Fishback, Esq. | <u>PENINSULA</u> |
| WATKINS & LETOFSKY, LLP | Jeffrey A. Berman, Esq. |
| 2900 S. Harbor B1Vd., Suite 240 | Kiran A. Seldon, Esq. |
| Santa Ana, CA 92704 | SEYFARTH SHAW LLP |
| Tel:     (949) 476-9400 | 2029 Century Park East, Suite 3500 |
| Fax:     (949) 476-9407 | Los Angeles, California 90067-3021 |
| Email:  <u>dw@wl-llp.com</u> | Tel:     310-201-1541 |
| | Fax:     310-282-6986 |
| | Email:  <u>JBerman@seyfarth.com</u> |
| | Email:  <u>KSeldon@seyfarth.com</u> |

15

16

17

18

19

20

21

If electronic service is indicated above, I caused the documents to be sent to the persons at

22

the electronic notification addresses listed above, based on an agreement of the parties to accept service by electronic transmission.  I am readily familiar with the firm's practice for filing

23

electronically, and the document would be electronically served that same day in the ordinary course of business following ordinary business practices.

24

If service by U.S. Postal Service is indicated above, I am readily familiar with the firm's

25

practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the

26

ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit

27

for mailing in affidavit.

28

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

FENTON & KELLER
ATTORNEYS AT LAW
MONTEREY

{JVS-01210009;1}

1    Executed on January 20, 2022, at Monterey, California.

2                                          *Julia Smith*
                                          Julia V. Smith

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENTON & KELLER
ATTORNEYS AT LAW
MONTEREY

{JVS-01210009;1}                          - 2 -

**PROOF OF SERVICE**

I, Julia V. Smith, declare:

I am a citizen of the United States and employed in Monterey County, California.  I am over the age of eighteen years and not a party to the within-entitled action.  My business address is 2801 Monterey-Salinas Highway, Post Office Box 791, Monterey, California 93942-0791.  On January 21, 2022, I served a copy of the within document(s):

**NOTICE OF REMOVAL**

☐      (**BY U.S. MAIL**) by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, the United States mail at Monterey, California addressed as set forth below.

☐      (**BY OVERNIGHT SERVICE**) by placing the document(s) listed above in a sealed <u>Federal Express</u> envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a <u>Federal Express</u> agent for delivery.

☒      (**BY EMAIL**) by transmitting via e-mail or electronic transmission the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

| **Counsel for Plaintiffs** | **Co-Counsel for Defendant COMMUNITY HOSPITAL OF THE MONTEREY PENINSULA** |
|---|---|
| Daniel R. Watkins, Esq. | Jeffrey A. Berman, Esq. |
| Parisa Fishback, Esq. | Kiran A. Seldon, Esq. |
| WATKINS & LETOFSKY, LLP | SEYFARTH SHAW LLP |
| 2900 S. Harbor B1Vd., Suite 240 | 2029 Century Park East, Suite 3500 |
| Santa Ana, CA 92704 | Los Angeles, California 90067-3021 |
| Tel:  (949) 476-9400 | Tel:  310-201-1541 |
| Fax:  (949) 476-9407 | Fax:  310-282-6986 |
| Email: dw@wl-llp.com | Email: JBerman@seyfarth.com |
| | Email: KSeldon@seyfarth.com |

If electronic service is indicated above, I caused the documents to be sent to the persons at the electronic notification addresses listed above, based on an agreement of the parties to accept service by electronic transmission.  I am readily familiar with the firm's practice for filing electronically, and the document would be electronically served that same day in the ordinary course of business following ordinary business practices.

If service by U.S. Postal Service is indicated above, I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

FENTON & KELLER
ATTORNEYS AT LAW
MONTEREY

{JVS-01210009;1}

PROOF OF SERVICE

1    Executed on January 21, 2022, at Monterey, California.

2                                                    *Julia V. Smith*
                                            _____
3                                                  Julia V. Smith

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28